NICK ANGEROSA and PATSY DEIORIO, Respondents, v. THE WHITE COMPANY, Appellant.

Fourth Department, September 23, 1936.

*S. Sheldon Judson* [*William R. Lee* of counsel], for the appellant.
*Bartle Gorman,* for the respondents.

Edgcomb, J. Asserting that they were induced to purchase a motor truck through the false and fraudulent representations of the defendant as to its capacity, plaintiffs elected to rescind the sale and brought this action to recover the purchase price paid for the vehicle. They were successful at the Trial Term.

It is said that Mr. Miller, a salesman of the defendant, assured the plaintiffs that the truck was built to carry ten or twelve tons, without being overloaded at the latter figure. There is evidence tending to show that this assertion was false.

Appellant insists, however, that it is not responsible for Miller's statements. He was not an officer of the corporation but a mere salesman, a soliciting agent working for a stipulated salary per month; his authority was limited; by his contract of employment he was denied the right to make any representations, whether true or false, other than those contained in the current publications of the company.

Appellant, however, cannot hope to escape liability for Miller's misstatements, if it clothed him with the apparent authority to make these representations although in so doing he exceeded his precise instructions. " Scope of authority " includes not only the actual authorization conferred upon the agent by his principal, but also that which has apparently or impliedly been delegated to him. (*Wen Kroy Realty Co.* v. *Public Nat. Bank & Trust Co.*, 260 N. Y. 84, 91; *Bickford* v. *Menier*, 107 id. 490, 494; *Walsh* v. *Hartford Fire Ins. Co.*, 73 id. 5, 10.)

An agent empowered to sell property is presumed to possess the right to make such representations regarding the condition and quality of the subject of the sale as usually accompany such transactions. (*Mayer* v. *Dean*, 115 N. Y. 556, 560, 561.)

One of the first inquiries which a prospective purchaser of a truck would naturally make concerning the vehicle which he contemplated buying would be its carrying capacity, and a salesman who refused to answer such a question would make few, if any, sales, and would be of but little benefit to his employer.

The jury was justified in finding that when the defendant employed Miller to solicit the sale of its products, it held him out to the public as one whose statements and representations might be relied upon, in so far as they related to the condition and quality of the article he was attempting to sell.

"A transaction into which one is induced to enter by reliance upon untrue and material representations as to the subject matter, made by an agent entrusted with its preliminary or final negotiations, is subject to rescission at the election of the person deceived." (Restatement of the Law of Agency, vol. 1, § 259.)

Furthermore, the defendant will not be permitted to give validity to the sale, and in the same breath repudiate the fraudulent methods employed by its representative in bringing it about. By electing to affirm the contract and seeking to enforce it, appellant adopted that which is detrimental as well as that which is beneficial. A principal who gives his agent authority to solicit a sale and accepts the fruits of his efforts, will be held responsible for the fraudulent as well as the fair means by which the contract was obtained, if such instrumentalities are in line with the accomplishment of the object of the agency. (*Mayer* v. *Dean*, 115 N. Y. 556, 561; *Elwell* v. *Chamberlin*, 31 id. 611; *Bennett* v. *Judson*, 21 id. 238; *Hathaway* v. *Johnson*, 55 id. 93.)

The troublesome part of this case lies in the fact that several months after the preliminary negotiations had taken place, and the representations relied upon had been made, the parties reduced their agreement to writing. A purchase order was signed by the plaintiffs in which they agreed to buy the truck in question, subject to the approval of an executive officer of the defendant at Cleveland, Ohio.

Immediately above the signature of the plaintiffs on this order appears the following statement: " It is further understood and agreed that this order is given subject to the conditions printed on the reverse side hereof, which conditions are made part hereof; that no promises or representations have been made to the undersigned by you or your agents in respect to said property and that there are no agreements, covenants or obligations between you or any agent of yours and the undersigned, nor any warranties or guaranties, express or implied or imposed by law or statutory or otherwise, relating to said property, except such as are embraced in this order or in the Standard Warranty of The White Company printed on the reverse side hereof."

The standard warranty referred to is set forth on the reverse side of the order in the following language: " This warranty is expressly in lieu of all other warranties, express or implied, and of all other obligations or liabilities on the part of The White Company which neither assumes nor authorizes anyone else to assume for it any other obligation or liability, or to give any other warranty or make any other representation on its behalf in connection with the sale or use of any motor vehicle."

The above-quoted provisions in the contract are printed in large type, and stand out in bold relief from the rest of the document. As one looks at this order his eye naturally falls upon these clauses, and there is no excuse for their being overlooked. While the respondents say that they did not read the order, they had every

opportunity so to do, and no excuse is forthcoming for their neglect. One should always use proper vigilance in dealing with another; he cannot close his eyes to information which lies within his easy grasp. The law favors the diligent, and not one who sleeps on his rights. *Vigilantibus et non dormientibus jura subveniunt.* Before a person signs an instrument he is charged with the duty of reading it, and if he fails so to do he is guilty of gross negligence. If he is unable to read, he is equally careless if he does not have the document read to him. Ordinarily one is bound by an instrument which he signs, even if his mind never gave assent to the terms therein expressed. (*Pimpinello* v. *Swift & Co.*, 253 N. Y. 159, 162, 163; *Metzger* v. *Ætna Ins. Co.*, 227 id. 411, 415, 416; *Knight* v. *Kitchin*, 237 App. Div. 506, 511; *Johnson* v. *Star Permanent Wave Corp.*, Id. 868; Williston Sales [2d ed.], § 654.)

There is no suggestion here that the plaintiffs were deceived as to the contents of the purchase order. If they put their names to an instrument of which they were ignorant, it was their own fault, and they alone are to blame for the predicament in which they find themselves. They were given a copy of the order, and took it away with them. They have never complained that they did not know what they were signing. The alleged fraudulent representation occurred in the preliminary negotiations, long before the purchase order was signed, and did not relate to the contents of the paper.

It is true that contributory negligence is not a defense to an action in fraud. There is no comparison between negligence and willful misconduct. To deny relief to the victim of a deliberate fraud because of his own negligence would encourage falsehood and dishonesty. (*Albany City Savings Institution* v. *Burdick*, 87 N. Y. 40; *King* v. *Livingston Mfg. Co.*, 180 Ala. 118, 127; 60 So. 143; *Antonopoulos* v. *Chouteau Trust Co.*, 337 Mo. 252; 84 S. W. [2d] 1059; *Nash Mississippi Valley Motor Co.* v. *Childress*, 156 Miss. 157, 163; 125 So. 708; 42 Harvard Law Review, 733, 739, 740; Williston Sales [2d ed.], § 634.)

The plaintiffs were not charged with active vigilance to ascertain the truth of Miller's statement regarding the capacity of the truck; they had a right to rely upon the correctness of the representation, unless they knew or had reason to believe that it was inaccurate. (*Brown* v. *Post*, 1 Hun, 303; affd., on opinion of DANIELS, J., in General Term, 62 N. Y. 651.) But this rule does not excuse the failure of the plaintiffs to read the purchase order before they signed it, where they were not induced so to do by any deceit or artifice on the part of the defendant, and where the contents of the instrument were not misrepresented to them.

For the same reason the rule laid down in *Wilcox* v. *American Tel. & Tel. Co.* (176 N. Y. 115) and *Outcault Advertising Co.* v. *Stratton* (178 App. Div. 353), giving to one whose signature to an agreement was obtained by fraud the right to attack its validity, even though he may have been negligent in failing to read it, has no application here.

As before noted, the purchase order provided that it was to become a binding contract when approved by an executive officer of the defendant at its home office. Such confirmation followed in due course of time.

We are, therefore, confronted with a contract which has been deliberately executed by both parties without misrepresentation as to its contents, in which it is distinctly stated that no one has any power or authority to bind the company, or to make any representations on its behalf in connection with the sale of any motor vehicle, except as therein stated, and in which the parties chose to stipulate with each other that the writing contained every representation, agreement or promise relative to the truck which had been made between them. There was no recital in the order that the vehicle had a carrying capacity of from ten to twelve tons. On the contrary, it was expressly stated that the maximum gross weight, including the chassis, body, apparatus and load, was 28,000 pounds. The empty vehicle weighed approximately 12,000 pounds. That would make its carrying capacity, based on its rating, 16,000 pounds, or eight tons.

Perhaps some may say that under those circumstances the plaintiffs are bound by the written contract which they signed, and that they are precluded from maintaining an action against the defendant for false and fraudulent representations of its agent in connection with the preliminary negotiations leading up to the execution of the contract itself; that when the parties solemnly declared no representation of Miller unless specifically set forth in the agreement itself would be binding or controlling on the defendant, they meant exactly what they said, and should be held strictly to their agreement.

There are numerous authorities in foreign jurisdictions which deny to a purchaser the right to avail himself of antecedent fraud under such circumstances, and which hold that a written contract, complete on its face, and voluntarily executed, without the practice of any deceit as to its contents, meaning or execution, is binding upon the seller. These decisions make a clear distinction between fraud preliminary to the execution of the contract, and deception which entered into the making of the agreement itself. (*Sullivan* v. *Roche*, 257 Mass. 166; 153 N. E. 549; *Colonial Development Corp.* v.

*Bragdon*, 219 Mass. 170; 106 N. E. 633; *Cannon* v. *Burrell,* 193 Mass. 534; 79 N. E. 780; *Boss* v. *Greater Boston Mortgage Corp.,* 251 Mass. 455; 146 N. E. 686; *O'Meara* v. *Smyth,* 243 Mass. 188; 137 N. E. 294; *Barnebey* v. *Collier, Inc.,* 65 F. [2d] 864; *Lasher Co.* v. *LaBerge,* 125 Me. 475; 135 Atl. 31; *Bybee* v. *Embree-McLane Carriage Co.,* [Tex. Civ. Rep.] 135 S. W. 203; *National Guarantee & Loan Co.* v. *Thomas,* 28 Tex. Civ. Rep. 379; 67 S. W. 454; *Equitable Mfg. Co.* v. *Biggers,* 121 Ga. 381; 49 S. E. 271; *Schuster* v. *North American Hotel Co.,* 106 Neb. 672; 186 N. W. 87; *Baylies* v. *Vanden Boom,* 40 Wyo. 411; 278 Pac. 551; *Case Threshing Mch. Co.* v. *Broach,* 137 Ga. 602; 73 S. E. 1063; *Morgan* v. *Denton,* 28 Ga. App. 88; 110 S. E. 328; *Edison Fixture Co.* v. *Copoulos,* 3 N. J. Misc. 174; 127 Atl. 551; *Pacific States Automotive Finance Corp.* v. *Addison,* 45 Ida. 270; 261 Pac. 683; *Locomobile Co. of America* v. *Belasco,* 32 Cal. App. 329; 162 P. 920; *Steiner Mfg. Co.* v. *Kochaniewicz,* 3 N. J. Misc. 437; 128 Atl. 608; *Blackstad Mercantile Co.* v. *Porter & Co.,* [Tex. Civ. Rep.] 158 S. W. 216.)

The rule laid down in the above-cited authorities, however, has been repudiated in New York State. In this jurisdiction protection is given to one who is injured by falsehood or deception; fraud vitiates everything which it touches, and destroys the very thing which it was devised to support; the law does not temporize with trickery or duplicity. A contract, the making of which was induced by deceitful methods or crafty device, is nothing more than a scrap of paper, and it makes no difference whether the fraud goes to the factum, or whether it is preliminary to the execution of the agreement itself. (*Arnold* v. *National Aniline & Chemical Co.,* 20 F. [2d] 364; *Universal Fashion Co.* v. *Skinner,* 64 Hun, 293; *Bridger* v. *Goldsmith,* 143 N. Y. 424; *Industrial & General Trust, Ltd.,* v. *Tod,* 180 id. 215.)

As is pointed out in an article in 25 Columbia Law Review, 231, these divergent views are largely due to the conflicting ideas in the various localities regarding public policy. The Massachusetts rule stresses the advantage to be gained by certainty in the contractual relations of those who have made definite agreements; while in the New York rule greater consideration is given to the person who has suffered wrong through the deliberate fraud of another. In one jurisdiction it is thought that occasional damage to the individual caused by antecedent fraud is outweighed by the benefit to be derived by holding a party to his contract, and thus freeing it from attack, which in many instances proves to be unfounded. In other localities, including our own, fraud is considered so abhorrent and repugnant that the court will not permit itself to be made a party to enforcing any agreement upon which

the hand of deception has been laid, even though it occurred in the early stages of the negotiations.

The New York rule has been adopted in other States as will be seen by the following authorities: *Stroman* v. *Atlas Refining Corp.* (112 Neb. 187; 199 N. W. 26); *Menking* v. *Larson* (112 Neb. 479; 199 N. W. 823); *Schuster* v. *North American Hotel Co.* (106 Neb. 672; 186 N. W. 87); *Shepard* v. *Pabst* (149 Wis. 35; 135 N. W. 158); *Land Finance Corp.* v. *Sherwin Elec. Co.* (102 Vt. 73; 146 Atl. 72); *Landfried* v. *Milam* ([Tex. Civ. Rep.] 214 S. W. 847); *Jones* v. *Bankers Trust Co.* (239 Fed. 770); *Advance-Rumely Thresher Co.* v. *Jacobs* (51 Ida. 160; 4 P. [2d] 657).

Nor do I think we can say, as matter of law, that because of the foregoing statements in the offer of purchase, the plaintiffs are chargeable with notice that Miller exceeded his authority in making these representations, and had no right to give them any credence. It is very true that the right of a defrauded party to rely upon the representations of one whom he seeks to hold for fraud lies at the very foundation of his action. The principal will not be bound by the act of his agent in excess of his actual authority where the party doing business with the agent knows the extent of the latter's authority, or where the facts and circumstances are such as to put him upon inquiry as to the power and good faith of the agent. (*Quinlan* v. *Providence Washington Ins. Co.*, 133 N. Y. 356, 364; *Walsh* v. *Hartford Fire Ins. Co.*, 73 id. 5, 10.)

Whether a defrauded party relied upon the assertions and representations of the one with whom he does business, and whether he had a right so to do, are usually questions of fact for the jury. The statement in the purchase order relating to Miller's lack of authority to make any statements relating to the subject of the sale has a very important bearing upon the question of whether plaintiffs knew or should have known of such limitations, and whether in reality they depended upon or had a right to give any credit to Miller's assertions as to the capacity of the truck; but the question itself is, in my opinion, one for the jury and not for the court. Both plaintiffs testify that in making this purchase they not only believed Miller's statement to be true, but relied upon its accuracy. It was for the jury to say whether they were telling the truth.

It does not require very strong proof in an action of this character to establish that a purchaser was induced to act by reason of false statements of the seller. In many cases that fact will be inferred from the circumstances attending the transaction. (*Henn* v. *Douglass*, 147 App. Div. 473, 474; *Taylor* v. *Guest*, 58 N. Y. 262, 266.)

Furthermore, a principal can always ratify an act of his agent, and there can be an implied as well as an express adoption and confirmation of such act.

The defendant has retained the benefits of this agreement, which the jury has found was induced in its inception by the fraudulent representations of its agent. This it cannot do without adopting the instrumentalities by which the contract was consummated. (*Green* v. *des Garets*, 210 N. Y. 79; *Mayer* v. *Dean*, 115 id. 556, 561; *Elwell* v. *Chamberlin*, 31 id. 611; *Bennett* v. *Judson*, 21 id. 238; *Hathaway* v. *Johnson*, 55 id. 93.)

Closely interwoven with the proposition which I have just been discussing is the question of estoppel.

The written order which the plaintiffs signed did not become a binding agreement until approved by an executive officer of the defendant at its home office. Miller had no power to bind his principal to deliver this truck without such acceptance being first obtained. His authority did not carry with it the power to bind the company by an absolute sale. (*McKeige* v. *Carroll*, 120 App. Div. 521, 524; *Clough* v. *Whitcomb*, 105 Mass. 483; *McKindly* v. *Dunham*, 55 Wis. 515; 13 N. W. 485.)

Defendant had a right to approve or reject the offer as it saw fit. In making its decision it had before it the statement of the plaintiffs that no promises or representations had been made to them by any agent of the company in respect to the vehicle, and that there were no agreements or obligations between the purchasers and Miller relating to the property, except such as were embraced in the order itself. Did this statement of the plaintiffs warrant the defendant acting upon it in determining whether to approve the offer or not, and did it estop the plaintiffs from denying its truth?

Where one declares the existence of a fact to be true and another acts upon such declaration, the party asserting the fact cannot, as a general rule, be heard later to say that his first statement was untrue, when the result of such denial would be to his own advantage, and to the damage of the opposite party. (*Meeder* v. *Provident Savings Life Assurance Society*, 171 N. Y. 432, 436; *Pennsylvania Steel Co.* v. *Susswein*, 132 App. Div. 659, 661.)

I do not think that the principle of estoppel is applicable in this case. That is a doctrine which is essentially equitable in its nature, and is founded on good conscience and fair dealing. It is invoked to prevent fraud and injustice. (*Lawrence* v. *American Nat. Bank*, 54 N. Y. 432, 436.) One who has acted in bad faith cannot avail himself of the remedy. There can be no estoppel against dishonest

conduct. The perpetrator of fraud cannot close the lips of his victim and deny him the right to state the facts as they actually exist.

It may be urged that, if the provisions contained in the written offer to purchase are not held to be binding upon the plaintiffs, there is no way in which a principal can protect himself against the unauthorized act of his agent. While something may be said in favor of such a proposition, I think the best answer is that one who takes proper care in the selection of his employees, and picks only those who are honest and reliable, will need no such protection. Of two innocent persons, he who has made damage possible by some act of his is the one who should suffer.

It is also urged that the plaintiffs cannot recover because of their laches in rescinding their contract of sale.

The truck was delivered to the plaintiffs on June 8, 1933. It was finally left at defendant's sales room in Utica on October 17 or 18, 1933. While the delay in returning the vehicle would ordinarily preclude plaintiffs' recovery, there is ample evidence from which the jury could find that the trouble, which was discovered at the outset, was reported promptly to Miller, and that he assured the purchasers that it would be remedied, and that the truck would be satisfactory as soon as it was " broken in."

A buyer's exercise of dominion over property purchased does not preclude him from rescinding the contract where he is reasonably misled by assurances of the seller, or is induced to give the article a further trial. (*Wegenaar* v. *Dechow*, 33 App. Div. 12, 16; *Jackson* v. *Foley*, 53 id. 97, 104.)

The various questions of fact were left to the jury in a fair and impartial charge — one which fully and correctly stated the principles of law to be applied before the plaintiffs were entitled to a verdict. I find no reversible error in these instructions. Neither counsel seemed to be satisfied with the charge as first made. Both proceeded to make innumerable requests, covering largely the same matters which had already been amply covered. The effect undoubtedly was to confuse and perplex the jury.

While counsel have the legal right to insist that the jury shall be instructed on the various legal propositions involved in the case on trial, and while they cannot be capriciously or arbitrarily deprived of that privilege (*Zabriskie* v. *Smith*, 13 N. Y. 322; *Chapman* v. *McCormick*, 86 id. 479, 482), no one has the absolute right to unreasonably prolong the trial by protracted and interminable requests to charge on propositions which do not relate directly to the facts in the case, or which have been fully covered in the main charge. (*O'Neil* v. *Dry Dock, East Broadway & Battery R. R. Co.*,

129 N. Y. 125, 130, 131; *Schuhle* v. *Cunningham*, 14 Daly, 404, 407.) The trial judge is vested with some discretion regarding the number of requests which he will rule upon, and when these applications unduly and unreasonably prolong the trial, and when their effect is to confuse rather than aid and enlighten the jury, the court may wisely exercise his discretion and put an end to such procedure. (*O' Neil* v. *Dry Dock, East Broadway & Battery R. R. Co.*, 129 N. Y. 125, 131.)

While counsel by their endless requests were doubtless attempting to safeguard the rights and interests of their clients, I cannot help but think that the result served to disconcert and perplex the jury, and that the court, in the interest of justice, might well have exercised his discretion and put an end to the wearisomely protracted applications of both counsel. Certainly the appellant cannot complain that its requests were curtailed; they were patiently listened to and ruled upon.

While the case is not destitute of difficulty, I have reached the conclusion that the evidence raised questions of fact which must be passed upon by a jury, and that we would not be justified in disturbing the verdict.

All concur, except CROSBY and LEWIS, JJ., who dissent and vote for a reversal on the law and a dismissal of the complaint, in an opinion by CROSBY, J. Present — SEARS, P. J., EDGCOMB, THOMPSON, CROSBY and LEWIS, JJ.

CROSBY, J. (dissenting). Plaintiffs have recovered a judgment against the defendant for the purchase price of a truck, the carrying capacity of which they claim was misrepresented to them by defendant's agent. Although the plaintiffs discovered the lack of the truck's capacity soon after they acquired it, they continued to use it for months before they rescinded the purchase and returned the truck to defendant's agent. However, in view of the verdict, we must assume that the delay of plaintiffs in rescinding the sale was justified by the efforts of defendant's agent to persuade plaintiffs that the truck could be made to do the work the agent said it would do.

In view of the verdict we must assume, too, that defendant's agent falsely represented to plaintiffs that the truck was a ten- or twelve-ton truck. In its contract of employment of its agent the defendant expressly withheld from its agent any authority to make representations concerning the capacity of the truck. Even so, I concede that defendant cannot escape responsibility for its agent's representations, made within the apparent scope of his authority. (*Wen Kroy Realty Co.* v. *Public Nat. Bank & Trust Co.*, 260 N. Y.

84, 91; *Bickford* v. *Menier*, 107 id. 490, 494; *Walsh* v. *Hartford Fire Ins. Co.*, 73 id. 5, 10.)

And in an action for rescission, or in an action to recover the purchase price, based upon rescission, I concede that the purchaser may succeed by showing that he relied upon false representations made by the seller's agent although such representations were made even beyond the apparent scope of the agent's authority. (*Bloomquist* v. *Farson*, 222 N. Y. 375; *Taylor* v. *Commercial Bank*, 174 id. 181.)

This is on the theory that one who accepts the benefit of a contract must also accept responsibility for the means by which such contract was procured.

And it is doubtless true that the making of statements concerning the quality of an article of personal property is within the apparent scope of the authority of an agent intrusted with the duty of working up sales. (*Mayer* v. *Dean*, 115 N. Y. 556, 561.)

The reason I cannot agree with the majority of the court is that the record makes it perfectly plain that, as a matter of law, the plaintiffs cannot say that the false statements of the defendant's agent were relied upon by plaintiffs in making the purchase of the truck. The contract of purchase took the form of an offer in writing by plaintiffs and an acceptance by defendant. The offer was one to purchase an eight-ton truck, and in it were these words: " It is further understood and agreed that this order is given subject to the conditions printed on the reverse side hereof; * * * that no promises or representations have been made to the undersigned by you or your agents in respect to said property and that there are no agreements, covenants or obligations between you or any agent of yours and the undersigned, nor any warranties or guaranties, express or implied," etc.

True, this offer was made upon a form furnished to plaintiffs by defendant's agent. But the words, above quoted, were not hidden away, as has sometimes been done, in an obscure corner of the paper, where they would be likely to escape attention, but were printed in conspicuous letters just above the signatures of plaintiffs. Furthermore, it did not happen here, as it sometimes does, that the agent procured the plaintiffs' signatures without giving them an opportunity to read the offer which they signed. They were given a copy of it to keep, they took it away with them and at all times retained it. It is undisputed that they could read. It was their duty to read the offer which they signed. (*Pimpinello* v. *Swift & Co.*, 253 N. Y. 159, 162, 163; *Metzger* v. *Ætna Ins. Co.*, 227 id. 411, 415, 416.)

I do not place my dissent upon the ground that the plaintiffs were guilty of negligence in not being more vigilant to avoid the consequences of the agent's fraud. Contributory negligence is not a defense in a fraud action, as it is in a personal injury action. (*Albany City Savings Institution* v. *Burdick,* 87 N. Y. 40.)

Rather I say that plaintiffs, if allowed to succeed, are committing a fraud upon defendant in saying to defendant that they do not rely on any representatations of its agent, and afterward saying they did so rely. The agent's fraud induced negotiations but it did not induce a sale. Plaintiffs' own misrepresentation induced the sale.

Look at the position in which defendant is placed. It must employ agents to work up sales. It limits their authority by express contract. But, mindful of the fact that agents may still involve them in the consequences of fraud, while acting beyond their actual authority and within the apparent scope of their authority, defendant puts out a form of offer for purchasers to sign. And that form says, as plainly as words can say: "At this point I want to know whether my agent has exceeded his express authority; you know, you tell me." By telling defendant that they relied upon no statements of its agent, plaintiffs should be estopped from repudiating the solemn assurance so given to defendant. Otherwise a manufacturer doing a business widely scattered all over the world is helpless to protect itself from the frauds of its agents, or indeed the joint fraud of dishonest agents and dishonest purchasers conniving together, the one anxious to derive a sales commission, the other to acquire a season's use of a truck for nothing.

There is not a particle of proof or a suggestion that defendant's agent misrepresented to plaintiffs the contents of the order which they signed, or concealed or diverted their attention from the statement therein that no reliance was placed upon any representations of the agent. In making the offer directly to defendant, plaintiffs knew that the agent was not assuming to make the contract. Their dealings with him were over. They owed to defendant the duty to tell it the truth. Had defendant, upon receiving the order, written to plaintiffs to ask them if they were relying upon any statements of the agent, and had plaintiffs responded that they were not, and that the agent had, in fact, made no warranties, I doubt if any one would say that they could go back on their word. The situation here is not greatly different.

I think I shall have to concede that if this were an action against the agent himself (assuming he had been the seller of the truck) the plaintiffs could succeed against him, even though the contract

of sale contained an admission by plaintiffs that no representations had been made to them, if in fact there had been. (*Arnold* v. *National Aniline & Chemical Co.*, 20 F. [2d] 364; *Bridger* v. *Goldsmith*, 143 N. Y. 424.)

And why is this so? And why should it not be so in the instant case? The answer is obvious, as will appear from the opinion in the last-cited case. The court said (in speaking of the statement, in the contract, that the seller had made no representations or warranties): "The question now is whether it can be given the effect claimed for it by the learned counsel for the defendant, to preclude the plaintiff from alleging fraud in the sale and pursuing in the courts the remedies which the law gives in such cases. *It cannot operate by way of estoppel for the obvious reason that the statements were false to the defendant's knowledge.*" (Italics mine.)

It is unnecessary to quote further from that opinion, but the balance of it is enlightening. The point to the whole matter is that in the *Goldsmith* case the purchaser and seller were dealing with each other directly. Each knew what the other knew. Each knew that representations had been made by the seller to the purchaser. Each knew they were stating an untruth when they said, in their contract, that no representations had been made. The seller knew that his representations were false, and the defendant was not injured or influenced, in the making of the contract, by the inclusion in it of the statement that no representations had been made.

But in our case, one in which plaintiffs seek equitable relief, defendant had no direct dealings with plaintiffs until it received from plaintiffs an offer which deliberately misled defendant in regard to a matter as to which it had no means of finding out except by relying on the solemn assurance of the plaintiffs themselves. Defendant could not find out from its agent. He would not tell defendant the truth, if he had deceived plaintiffs. How is the defendant to learn the truth? What measures could it take to protect itself, if it is not permitted to rely on the word of plaintiffs? I am at a loss to know. I dissent and vote for a reversal of the judgment and a dismissal of the complaint.

LEWIS, J., concurs.

Judgment and order affirmed, with costs.