Molly Cohen, Appellant, v. William Cohen, Respondent.

First Department, May 22, 1956.

*Harry Balterman* of counsel (*Harold S. Lazar* and *Harry Fromberg* with him on the brief; *Fromberg & Fromberg* and *Harold S. Lazar,* attorneys), for appellant.

*Morris Gottlieb* for respondent.

*Per Curiam.* Plaintiff wife has brought this fraud action against her husband, alleging that in reliance upon his fraudulent misrepresentations she was induced to discontinue three pending lawsuits and assign to him her interests in a partner-

ship and in certain corporations. The sole and only misrepresentation attributed to defendant is that he stated '' he would effect a reconciliation with plaintiff, return to live with her and their children permanently, and permanently resume their marital relationship ''. The agreement that was allegedly executed by plaintiff in reliance upon this representation contained the following paragraph: '' 11. The parties hereby covenant and agree that neither has made any warranties or representations to the other, *including any representations or warranties as to the continuation of the marital status (the parties have reconciled their differences and are now living together)*, outside of those expressed in this agreement, and that this agreement contains the entire agreement and understanding of the parties.'' (Emphasis supplied.)

It is significant that the only representation attributed to defendant in the complaint is the one above quoted and that the only specific disclaimer of any representation contained in the separation agreement is as broad as the alleged representation and completely refutes it. The settlement agreement is annexed to the complaint and must be read in conjunction with it. It was signed not only by the parties but by their attorneys, and reflects the latters' careful draftsmanship. There is no allegation in the complaint that plaintiff did not read or did not understand the agreement; in fact, she initialed the agreement in the margin opposite the very paragraph disclaiming the alleged representation. Nor is there any claim that any form of duress was exercised to procure her consent to the settlement arrangements.

Just as in *Ernst Iron Works* v. *Duralith Corp.* (270 N. Y. 165, 169) the plaintiff here '' points to the cases which hold that a person cannot exempt himself from liability for fraud by inserting in his contract a blanket or merger clause. (*Bridger* v. *Goldsmith,* 143 N. Y. 424; *Jackson* v. *State,* 210 App. Div. 115; *Pearson & Son, Ltd.,* v. *Lord Mayor of Dublin,* [1907] A. C. 351. See 5 Wigmore on Evidence [2d ed.], § 2439.) '' But the question in this case is not whether the conventional merger clause in the settlement agreement precludes plaintiff from introducing testimony to show that false inducing representations were made by defendant. The question rather is whether plaintiff can possibly prove she relied on the misrepresentations, since such reliance is an essential ingredient of her cause of action. We give plaintiff the benefit of every fair intendment and inference that can be drawn from the complaint and annexed agreement; but it seems to us that the specific disclaimer in the agreement of the representation alleged in the complaint effec-

tively destroys plaintiff's allegation that she executed the agreement in reliance upon defendant's representation. The order dismissing the complaint for insufficiency should be affirmed.

BREITEL, J. (dissenting). I dissent and vote to reverse and deny the motion to dismiss the complaint for insufficiency.

Special Term held and the majority of this court is now holding by implication, albeit very much qualified, that one who fraudulently obtains a written agreement may obtain immunity for his fraud by including in such agreement a clause denying that any representation was made with respect to the matter alleged to constitute the fraud. This is decided on the pleading alone, the allegations of which we are bound to take as true.

That has never been the law in this State, and except for a minority rule that, onetime, but no longer, had its principal foundation in Massachusetts, it has not been the law in most of the other States, nor in England. The minority rule has been expressly repudiated in our courts and criticized by leading jurists who have addressed themselves to this precise subject (*Bridger* v. *Goldsmith*, 143 N. Y. 424; *Ernst Iron Works* v. *Duralith Corp.*, 270 N. Y. 165; *Angerosa* v. *White Co.*, 248 App. Div. 425, affd. 275 N. Y. 524; 3 Williston on Contracts [rev. ed.], §§ 811–811A; 3 Corbin on Contracts, §§ 578, 580; 9 Wigmore on Evidence [3d ed.], § 2439; Restatement, Contracts, § 573; Richardson on Evidence [8th ed.], § 586).[1]

In the *Bridger* case (143 N. Y. 424, 428) it was said: "I assume that there is no authority that we are required to follow in support of the proposition that a party who has perpetrated a fraud upon his neighbor may, nevertheless, contract with him in the very instrument by means of which it was perpetrated, for immunity against its consequences, close his mouth from complaining of it and bind him never to seek redress. Public policy and morality are both ignored if such an agreement can be given effect in a court of justice. The maxim that fraud vitiates every transaction would no longer be the rule but the exception. It could be applied then only in such cases as the guilty party neglected to protect himself from his fraud by means of such a stipulation. Such a principle would in a short time break down every barrier which the law has erected against fraudulent dealing."

1. Cf. *Sabo* v. *Delman*, 286 App. Div. 238, motion for leave to appeal granted 286 App. Div. 1002, and *Soviero Bros. Contr. Corp.* v. *City of New York*, 286 App. Div. 435, 440–441, motion for leave to appeal granted 286 App. Div. 962.

In the *Angerosa* case (248 App. Div. 425, 431, *supra*), a leading case in this field, the immunity rule was discussed and rejected in these words: '' The rule laid down in the above-cited authorities, however, has been repudiated in New York State. In this jurisdiction protection is given to one who is injured by falsehood or deception; fraud vitiates everything which it touches, and destroys the very thing which it was devised to support; the law does not temporize with trickery or duplicity. A contract, the making of which was induced by deceitful methods or crafty device, is nothing more than a scrap of paper, and it makes no difference whether the fraud goes to the factum, or whether it is preliminary to the execution of the agreement itself.''

It is urged that this is a special case which merits exception.

The complaint alleges that the parties, husband and wife, had been separated, and had been engaged in a number of litigations which were still pending when the parties entered into the written settlement agreement in suit. Plaintiff wife alleges that, as an inducement to making this contract, the husband represented to her that they would be reconciled, and that he intended to remain permanently reconciled and live together with her. She alleges further, in effect, that, when he made these representations, the husband was lying and that she relied on these representations, and in reliance thereon, she signed the agreement in question.

It is, of course, elementary in this State that misrepresentation as to one's state of mind, even when promissory in form, may supply the requisite element in fraud (*Adams* v. *Gillig,* 199 N. Y. 314).

The special circumstance in this case is that the agreement recites, and it is so alleged in the complaint by virtue of the annexation and incorporation of the written agreement, that the husband was making no representations other than those contained in the agreement and particularly with respect to continuation of the marital status.[2] It is because of this disavowal of specific representations that the majority is holding that the wife may not sue in damages for fraud — (or that she must allege evidentiary facts to avoid the clause!), and, since we must accept the pleading as true, even though it be the fact that the husband lied to the wife with intention to deceive her and that

2. The text is: " The parties hereby covenant and agree that neither has made any warranties or representations to the other, including any representations or warranties as to the continuation of the marital status (the parties have reconciled their differences and are now living together), outside of those expressed in this agreement, and that this agreement contains the entire agreement and understanding of the parties."

she, in reliance thereon, signed the agreement. Note that we are not now concerned with whether the wife can prove her allegations to a clear and convincing degree, as is required in an action for fraud, but whether her allegations, assuming that she can prove them to a requisite degree, entitle her to relief. The burden is a difficult one, but not one which we may say, as a matter of law, she may not be able to carry, even if she have documents to prove it. Indeed, it is not an unwonted species of deception to make oral representations with respect to what is precisely in the agreement for the purpose of allaying the normal cautions of the not too wary. Dealing, as we are here, with a domestic situation, it may not be farfetched that the oral representations were in fact made at the same time that the husband of 27 years' standing asked the wife to sign a paper and disregard its literal provisions. It is significant that the parties were living together when the agreement was signed. Shortly thereafter they separated again.

(It is interesting to consider the inclusion of the specific disavowal in the agreement. Its presence suggests strongly that the parties discussed the matter. But what was said is not clear. In any event, what was said is determinable only as an issue of fact upon a trial, and plaintiff wife would be obliged to prove her case to a clear and convincing degree, and not merely by a preponderance of the evidence.)

As a matter of fact, although the disavowal in an agreement of a specific oral representation, upon which an alleged fraud is grounded, is unusual, it is not unique. The precise issue arose in the *Ernst* case (270 N. Y. 165, 168, *supra*). In that case the written distribution agreement provided, with respect to the defendant, that: " ' The company makes no representation regarding previous sales in distributor's territory.' " It also provided, generally, that there was no representation or warranty of any kind unless incorporated in the agreement. Nevertheless, upon the trial, testimony was received that the defendant's agent had falsely represented that there had been and were no other distributors in the city of Buffalo or the county of Erie. The Court of Appeals flatly held that this testimony was properly received; that it did not violate the parol evidence rule, even though it conflicted with the provisions of the contract, stating (*supra,* p. 169) : " The plaintiff, however, points to the cases which hold that a person cannot exempt himself from liability for fraud by inserting in his contract a blanket or merger clause. * * * [cases cited] No one can dispute the validity and the justice of the rulings in the cited cases. A rogue cannot protect himself from liability

for his fraud by inserting a printed clause in his contract. This principle disposes of the blanket clause providing that no representation shall be binding unless incorporated in the agreement.'' The court went on to point out that the admissibility of the parol evidence of the statement made by the agent in contradiction of specific provisions in the contract presented a closer question, *not because the provision was more specific,* but because the issue would then turn on whether the agent was authorized to make such representations and because of doubtful reliance upon such a representation made merely by an agent (*supra,* p. 170). Most significantly, however, the court in its later discussion was viewing the proof after trial and not upon a pleading, all the allegations of which must be taken as true. In any event, our case does not involve this problem because here principals concededly were dealing with each other.

Whether the wife in fact relied on the oral representation, especially in the face of the specific disavowal in the written agreement and the fact that she was represented by lawyers, and whether the oral representation was material, are questions of fact not determinable from the pleading alone. She alleges that she did rely on the oral representations and that they materially induced her to sign the agreement. She alleges and she would have to prove to a clear and convincing degree that the husband resumed living with her and feigned a reconciliation solely to obtain a property settlement, and he did so deceiving her as to his intentions, his sincerity, and his state of mind. Heavy though this burden be, it is not shown on the face of the pleading to be impossible. In that context we apprehend that the more guileful and unscrupulous the deceiver, the more extraordinary and effective the possible deception.

To the plaint that this view affords no lasting protection based on a written agreement, the answer is short and simple: No, not to one who lies to obtain the agreement and the self-elevating bootstrap clause contained therein. Indeed, a release solemnly executed, or even a judgment, will not stand if fraud be proven with respect to its inducement.

In summary, the elementary legal and logical principle is that no matter how clear, how integrated, or what provisions it contains — even to waivers or disavowals of representations or fraud, whether general or specific (and perforce, the general includes the specific, so no distinction may be based on the specificness of the disavowal) — a contract cannot stand if it was obtained by fraud. A contract once established precludes parol evidence; but it is always possible to resist the establish-

ment of the contract by a parol showing of fraud. For fraud, however smoothly propelled, is analogous to duress; it is but a sneak-thief substitute for force.

Accordingly, the order dismissing the complaint should be reversed and the motion denied.

PECK, P. J., BOTEIN and FRANK, JJ., concur in *Per Curiam* opinion; BREITEL, J., dissents and votes to reverse and deny the motion in opinion, in which VALENTE, J., concurs.

Order affirmed, with $20 costs and disbursements to the respondent.