The plaintiffs, Gia M. Downs and David L. Downs (husband and wife), appeal from a summary judgment in favor of the defendants, D. Wallace Corporation ("the Corporation") and Danny Wallace, president of the Corporation, in an action alleging fraud.[1] We reverse and remand. *Page 339 
On March 27, 1990, the Downses entered an agreement with Terry Steadman to purchase from him a business called Hazel Green Feed and Seed ("the Business"). The purchase price was $16,000. The Downses executed a note to finance the purchase price, promising to pay Steadman $257.43 per month, beginning April 19, 1990, and continuing for seven years. The purchase agreement also provided that for $800 per month the Downses would sublease from Steadman the building where the Business was located. It is undisputed that although Wallace and the Corporation acted as brokers in this transaction, they received no compensation for their services in regard to this transaction.
The Downses failed to earn a profit from the Business. In December 1990, they became delinquent in their monthly payments to Steadman.[2] On March 19, 1991, the Downses filed this action, alleging that Steadman, Wallace, and the Corporation had fraudulently induced them to purchase the Business by misrepresenting and suppressing facts about the former ownership, the income, and the profitability of the Business. Steadman counterclaimed, seeking payments due under the note. The trial court entered a summary judgment for the defendants as to the Downses' claims and, thereafter, the Downses settled with Steadman as to both their claims and Steadman's counterclaim. The Downses appeal the summary judgment only as to their fraud claims against Wallace and the Corporation.
"In reviewing the disposition of a motion for summary judgment, we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact" and whether the movant was "entitled to a judgment as a matter of law." Bussey v. John Deere Co.,531 So.2d 860, 862 (Ala. 1988) (citing Chiniche v. Smith,374 So.2d 872 (Ala. 1979)); Rule 56(c) Ala.R.Civ.P. When the movant has carried the burden of making a prima facie showing, by admissible evidence, that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, the party opposing the summary judgment motion has the burden of presenting substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of BaldwinCounty, 538 So.2d 794, 797-98 (Ala. 1989); Ala. Code 1975, §12-21-12.
Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant, resolving all reasonable doubts against the movant.Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990); Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986); Harrellv. Reynolds Metals Co., 495 So.2d 1381, 1383 (Ala. 1986).
The Downses argue that the summary judgment was improper as to their fraud claims against Wallace and the Corporation, because, they say, Wallace and the Corporation failed to make a prima facie showing that there were no genuine issues of material fact as to whether Wallace and the Corporation misrepresented and suppressed material facts to induce them to purchase the Business. According to Mr. Downs's affidavit, Steadman first placed the Business on the market for sale in 1988. The Downses, in February 1988, saw an advertisement offering the Business for sale and talked for the first time with Wallace about the possibility of purchasing *Page 340 
it. However, the Downses could not obtain financing to purchase the Business. Instead, Mike Mitchell purchased the Business from Steadman. But, when Mitchell failed to earn a profit from the Business that year, by agreement with Steadman he returned the Business to Steadman.
In February 1989, Wallace contacted the Downses and told them that the Business was for sale again, at a lower price than the previous year. Mr. Downs said that when he asked Wallace why it was for sale again so soon, Wallace told him that it had not sold in 1988. The Downses did not purchase the Business in 1989 either. Richard Maddaloni did.
In February 1990, Wallace again contacted the Downses about purchasing the Business, at an even lower price than that quoted in 1989. Mr. Downs stated that this time Wallace told him that Maddaloni had returned the Business to Steadman because a family tragedy had left Maddaloni without time to run it. However, Steadman, in his affidavit, stated that Maddaloni had returned the Business because he could not "make the business go."
In 1990 Wallace gave the Downses a prospectus on the Business; that prospectus contained 1989 income figures supplied by Maddaloni. Although the Downses knew that the income figures were supplied by Maddaloni, they allege that Wallace falsely represented that the figures (1) included the cost of hiring an employee to run the business, (2) did not reflect the most profitable months of the year, and (3) did not show the actual gross income for the year. The Downses further allege that Wallace intentionally suppressed the true income figures.
On March 19, 1990, the Downses entered a purchase agreement with Steadman and began operating the Business. However, because of a dispute over the monthly rental amount owed Steadman under this agreement, the parties executed a second purchase agreement eight days later, on March 27, 1990.
In their motion for a summary judgment, Wallace and the Corporation denied generally making any representations to the Downses or suppressing any facts. In response, the Downses presented evidence, by affidavit, that Wallace did make the representations alleged in the complaint and that those representations were untrue. We must conclude that the conflicting evidence offered on the summary judgment motion created "a genuine issue of material fact" and that the summary judgment was improperly entered. In light of the plaintiffs' specific — and "substantial" — evidence that Wallace made misrepresentations, Wallace's general denial of any misrepresentation or suppression cannot be taken as entitling the defendants to a judgment as a matter of law.
Nonetheless, Wallace and the Corporation argue that they cannot be held liable for any misrepresentation or suppression made by them, because the written purchase agreement between Steadman and the Downses contained the following integration clause: "This Agreement constitutes the entire Agreement of the parties, and any oral . . . agreements pertaining to the terms herein are hereby declared null and void unless reduced to writing commensurate [sic] with the signing of this Agreement."
Because the Downses presented substantial evidence that Wallace and the Corporation fraudulently induced them to purchase the Business, to affirm the judgment for Wallace and the Corporation this Court would have to hold either that the integration clause (sometimes called a "merger" clause) in the Downses' purchase agreement forecloses them from introducing evidence of representations extraneous to the written agreement or that it renders their reliance on those representations unjustifiable as a matter of law.
"As a general proposition, the parol evidence rule applies to contract actions, not actions in tort. Parol evidence is ordinarily admissible to show that a written agreement was procured by fraud." Ramsay Health Care, Inc. v. Follmer,560 So.2d 746, 748 (Ala. 1990). Because the *Page 341 
Downses allege that Wallace and the Corporation fraudulently procured the purchase agreement between Steadman and the Downses, the quoted language from the purchase agreement would not necessarily bar the Downses from introducing evidence of representations made outside the written agreement.
Further, this Court has never held that an integration clause such as the one contained in the Downses' purchase agreement renders a party's reliance on oral representations unjustifiable, or unreasonable,[3] as a matter of law. To the contrary, this Court has consistently held that although a written contract stipulates that there were no oral understandings not incorporated therein, such a stipulation does not foreclose a party, as a matter of law, from establishing his reliance on fraudulent representations that induced him to enter the contract. See Harris v. M S Toyota,575 So.2d 74 (Ala. 1991); Stanard Tilton Milling Co. v. Mixon,243 Ala. 309, 312, 9 So.2d 911, 913 (1942); Standard Oil Co. v.Myers, 232 Ala. 662, 665, 169 So. 312, 314 (1936); AlabamaMachinery Supply Co. v. Caffey, 213 Ala. 260, 262,104 So. 509, 511 (1925); J.A. Fay Egan Co. v. Independent Lumber Co.,178 Ala. 166, 168, 59 So. 470, 471 (1912); see also AdvancedStudios of Alabama, Inc. v. Advanced Hairpiece, Inc.,607 F.2d 1138, 1139 (5th Cir. 1979) (applying Alabama law). Accord,AgriStor Leasing v. Farrow, 826 F.2d 732, 736 n. 6 (8th Cir. 1987) (applying Iowa law); V.S.H. Realty, Inc. v. Texaco, Inc.,757 F.2d 411, 418 (1st Cir. 1985) (applying Massachusetts law);King v. Horizon Corp., 701 F.2d 1313, 1318 (10th Cir. 1983) (applying Colorado law); Arnold v. National Aniline ChemicalCo., 20 F.2d 364, 369-70 (2d Cir. 1927) (applying New York law); RepublicBank Dallas v. First Wisconsin National Bank,636 F. Supp. 1470, 1473 (E.D.Wis. 1986) (applying Wisconsin law); Hall v. Crow, 240 Iowa 81, 34 N.W.2d 195, 199 (1948);Bates v. Southgate, 308 Mass. 170, 31 N.E.2d 551, 557-08
(1941); Burns v. Vesto Co., 295 S.W.2d 576, 579 (Mo.App. 1956); Hector M. v. Commissioner of Social Services,102 Misc.2d 676, 425 N.Y.S.2d 199, 205 (N.Y. Fam. Ct. 1980);Angerosa v. White Co., 248 A.D. 425, 290 N.Y.S. 204, 213
(1936); McInnis Co. v. Western Tractor Equip. Co.,63 Wn.2d 652, 388 P.2d 562, 565 (1964); Coson v. Roehl,63 Wn.2d 384, 387 P.2d 541, 544 (1963); Anderson v. Tri-StateHome Improvement Co., 268 Wis. 455, 459-60, 67 N.W.2d 853
(1955). This holding ensues from the rule that when an agreement has been induced by deliberate fraud, the written document reciting that agreement is void and is "of no more binding efficacy . . . than if it had no existence, or were a piece of waste paper." Drinkard v. Embalmers Supply Co.,244 Ala. 619, 621, 14 So.2d 585, 587 (1943); accord, Angerosa, 248 A.D. at ___, 290 N.Y.S. at 213; Coson, 63 Wn.2d at 387,387 P.2d at 544.
The policy behind permitting a party to establish his reliance on another's fraudulent inducements despite an integration clause in the written agreement has been well stated by the Massachusetts Supreme Court:
 "In the realm of fact it is entirely possible for a party knowingly to agree that no representations have been made to him, while at the same time believing and relying upon representations which in fact have been made and in fact are false but for which he would not have made the agreement. To deny this possibility is to ignore the frequent instances in everyday experience where parties accept, often without critical examination, and act upon agreements containing somewhere within their four corners exculpatory clauses in one form or another, but where they do so, nevertheless, in reliance upon the honesty of supposed friends, the plausible and disarming statements of salesmen, or the customary course of business. To refuse relief would result in a multitude of frauds and in thwarting the general policy of the law."
Bates, 308 Mass. at 182, 31 N.E.2d at 558, cited in V.S.H.Realty, Inc., *Page 342 757 F.2d at 418; King, 701 F.2d at 1318. Thus, although a party who in fact relies upon fraudulent inducements in the face of an integration clause may be negligent in so doing, his negligence will not prohibit him as a matter of law from recovering for injuries intentionally inflicted upon him.[4] To hold otherwise is to encourage deliberate fraud.
Even though an integration clause in a written agreement may support a finding that the plaintiff did not rely on extraneous representations, when the agreement has been induced by intentional fraud the mere presence of an integration clause in the written instrument does not, as a matter of law, insulate the guilty party.
Because there exist genuine issues of material fact as to the Downses' claims against Wallace and the Corporation, the judgment is due to be reversed and the cause remanded for further proceedings.
MOTION TO STRIKE BRIEF OVERRULED; REVERSED AND REMANDED.
ALMON, SHORES, ADAMS and KENNEDY, JJ., concur.
[1] The appellees, Danny Wallace and the Corporation, submitted only one brief to this Court. The Downses moved to strike that brief as to the Corporation, because it was signed only by Wallace and not by counsel for the Corporation. This Court has recognized the general rule "that a corporation can appear in court only through an attorney." A-OK Construction Co. v.Castle Construction Co., 594 So.2d 53, 54 (Ala. 1992). Although the record shows that, initially, the Corporation attempted to defend this action "pro se," J. Russell Munger is currently listed as the attorney for the Corporation, even though he did not sign the appellees' brief. Ordinarily, this Court would strike a brief submitted by a party represented by counsel when its counsel had not signed that brief. However, in A-OK, a corporation appealing a judgment against it submitted a brief signed by its president only, and this Court held that, although the appeal was due to be dismissed for that reason, a dismissal would only cause unnecessary delay, as the record was already before the Court and it showed that the summary judgment was due to be affirmed. In this case, because Wallace and the Corporation rely upon the same evidence in support of the trial court's judgment, striking the appellees' brief as to the Corporation would serve no real purpose. Therefore, we overrule the Downses' motion to strike the appellees' brief as to the Corporation and address the merits of the appeal as to both defendants.
[2] The Downses had paid a total of $2,227.01 toward principal and interest on the note.
[3] Before Hickox v. Stover, 551 So.2d 259 (Ala. 1989), "reasonable reliance" was the standard in fraud actions.
[4] This holding should not be construed as encouraging negligence and inattention to one's affairs. In order to recover for loss resulting from fraudulent inducement, a plaintiff still must establish that his reliance was justifiable under the circumstances.