[No. 11267.   Department Two.   April 8, 1914.]

UNION INVESTMENT COMPANY, *Appellant*, v.
H. J. ROSENZWEIG *et al.*, *Respondents*.[1]

SALES—FRAUD—DEFECTS—EVIDENCE—SUFFICIENCY.   A finding of
fraud in the sale of a horse for breeding purposes, and want of con-
sideration for the note given for the purchase price, is warranted,
where it appears that the horse was infected with a contagious dis-
ease rendering him unfit for breeding purposes, that sores from the
disease had been cauterized to conceal the cause, which was mis-
represented, and that, on the return of the horse under a warranty
to send another of the same breed and price, the vendors, sent a
"ridgling" of another breed, which, as dealers in horses, they knew
was unfit for the purpose.

BILLS AND NOTES—BONA FIDE PURCHASERS—EVIDENCE—SUFFICIEN-
CY.   Under Rem. & Bal. Code, § 3450, placing upon the holder of a
negotiable instrument the burden of proving that he acquired title
in due course, it is generally for the jury to determine whether the
proof was sufficient; and the question should be submitted to the
jury, notwithstanding there is no direct evidence to dispute plain-
tiff's evidence, where it appears that a note procured by fraud was
given as part payment for a stallion, sold in a distant state, that
the indorsee of the note was a banking corporation in that state,
extending large credits to the indorsers in their business, the char-
acter of which was well known to the bank, that the bank books
showed that the note was held as collateral to a general account,
that the indorsers were not insolvent, and that the plaintiff's prin-
cipal witnesses as to the good faith of the transfer were interested in
the result, and one of them the person who had perpetrated the
fraud upon the makers of the note.

SALES—ACTION FOR PRICE—GUARANTY—DEFENSES — FRAUD—WANT
OF CONSIDERATION.   A guaranty of a stallion for breeding purposes,
providing that if it did not come up to the guaranty, it was to be
replaced by another, which was declared to be the only contract,
guarantee or representation, does not preclude a defense to an ac-
tion on a note for the purchase price on the ground of fraud and
want of consideration from the worthless character of the horse
for the purpose for which it was purchased.

Appeal from a judgment of the superior court for Frank-
lin county, Holcomb, J., entered December 4, 1912, upon the

[1]Reported in 139 Pac. 874.

verdict of a jury rendered in favor of the defendants, in an action upon a promissory note.    Affirmed.

*Driscoll & Leonard,* for appellant.

*H. B. Noland,* for respondents.

Fullerton, J.—This action was brought by the appellant against the respondents to recover on a promissory note.    In its complaint, the appellant alleged that the note had been made and delivered by the respondents to McLaughlin Brothers, a partnership, and by the McLaughlin Brothers, endorsed and delivered to it, for value, before maturity, and that it was a holder thereof in due course.    The answer was a denial of the allegations of the complaint, and an affirmative plea of fraud in the procurement of the note, failure of consideration, and knowledge on the part of the appellant of the circumstances under which the note was procured by their endorser.    The answer also contained an affirmative plea to the effect that the endorsement and transfer of the note from McLaughlin Brothers to the appellant was made in pursuance of a conspiracy, entered into between them, which had for its purpose the giving of the transaction an appearance of good faith and thereby prevent defenses to an action brought to recover on the note which would prove fatal if sued upon by the original holders.    The reply was a general denial of the new matter in the answer.    At the trial, which was had before a jury, at the conclusion of the evidence, the appellant moved that the jury be discharged and that it have judgment in its favor, on the ground that the evidence showed conclusively that the note had been endorsed and transferred to it for value before maturity, and that there was nothing to impugn its good faith in the transaction.    The court overruled the motion, and submitted the cause to the jury, which rendered a verdict in favor of the respondents, on which judgment was afterwards entered.

There was abundant evidence in the record from which the

jury were warranted in finding fraud in the procurement of the note and want of consideration. The note was given as part of the purchase price of a stallion which the respondents desired for breeding purposes. The horse proved to be afflicted with an incurable infectious disease, which not only rendered him inefficient as a foal-getter but dangerous to the mares which were bred to him. Indeed, it was shown that some five of the mares took the disease from him, one of which died from its effects. The evidence also justifies the conclusion that the McLaughlin Bros. had knowledge of the condition of the horse at the time they delivered him to the respondents. He then had a fresh scab upon his leg which was accounted for by the explanation that he had been injured while in transportation. In the spring, however, when the horse was put to service, the wound developed into a running sore, and similar sores broke out elsewhere on his body. A veterinarian described his affliction as a well-known disease which remained quiescent during cold weather, but which developed in warm weather, and particularly in the breeding season, rendering the horse entirely unfit for breeding purposes. He gave it as his opinion, also, that the particular wound, visible at the time of the delivery of the horse, had been cauterized so as to conceal its true nature by giving it the appearance of an ordinary abrasion of the skin. By the terms of the warranty given with the horse, the vendors had agreed that, if the horse did not comply with the warranty, they would replace him with "another stallion of the same breed and price" on the return of the horse to them at their stables in Minneapolis, Minnesota. This horse, after discovery of his defects, was so returned and another one, selected by the vendors without consultation with the vendees, delivered in his place. This horse proved but little better than the first one. He was not of the same breed as the first. He proved to be so vicious in temper as to make him dangerous and exceedingly difficult to control, and was, moreover, a "ridgling," that is, a stallion only one of whose testicles

came down into the scrotum. These facts, it was shown, rendered him unfit for breeding purposes. It was testified that such a horse was not only uncertain as a foal-getter, but that a large per centum of his male progeny was liable to have his own defects, preventing their castration except by an expert, and then at a high percentage of loss. The horse was fully matured at the time of his delivery to the respondents; and, as the vendors were long time dealers in horses, the jury were fully warranted in finding that they knew of his defective condition at that time, and knew also that he was unsuitable and unfit for breeding purposes, and were warranted also, in drawing the conclusion that there was fraud in the procurement of the note and a total want of consideration therefor.

The more difficult question is whether the trial court erred in refusing to grant the motion of the appellant for judgment in its favor made at the conclusion of all of the evidence. As we have stated, the testimony of the appellant is that it is an endorsee of the note for value, prior to maturity, without notice of an infirmity in the instrument. It must be conceded that there is no direct evidence in the record which contradicts the appellant's evidence in this respect, and perhaps but little that indirectly does so. But it must be remembered that, on this question, the appellant had the affirmative of the issue. By the express provisions of the negotiable instruments act, when the title to a negotiable instrument is shown to be defective in the person negotiating it, the burden is on the holder of the instrument to prove that he, or some person under whom he claims, acquired title as a holder in due course. Rem. & Bal. Code, § 3450 (P. C. 357 § 117), *Keene v. Behan*, 40 Wash. 505, 82 Pac. 884; *Cedar Rapids Nat. Bank v. Myhre Brothers*, 57 Wash. 596, 107 Pac. 518; and a holder in due course is defined by the same act to be one who took the note before it was overdue, without notice that it had been previously dishonored, and one who took it in good faith and for value, and who at the time it was negotiated to him had no notice of any infirmity in

the instrument or defect in the title of the person negotia-
ting it. Rem. & Bal. Code, § 3443 (P. C. 357 § 103). Usu-
ally, where a litigant has the burden of sustaining the af-
firmative of an issue, it is for the trier of the fact to deter-
mine whether that burden has been sustained. The judge
sitting with a jury and having power to determine only
the legal phases of the cause before him, may and fre-
quently does determine, as a matter of law, that the evidence
introduced by the person having the burden of proof does not
sustain the issue; but the instances are rare indeed where, in
such cases, he can decide, as a matter of law, against the con-
clusion of the lawful triers of fact, that the proof does sustain
the issue. The reason is not far to seek. It is found in the
fundamentals of the law. The constitution guarantees to
each individual in all legal actions, using the term legal as
contradistinguished from actions of equitable cognizance, the
right of trial by jury. If, therefore, the court is to take
away from the jury and decide as a matter of law that a
particular fact is established by the evidence, the evidence
must be of such a nature as to leave no reasonable doubt of
the fact, and there must be no sustantial evidence, either di-
rect or indirect, to the contrary. In other words, before an
affirmative issue can be withdrawn from the jury and de-
termined as a matter of law, the evidence must be clear and
convincing and of such a nature that reasonable minds can
draw but one conclusion therefrom. *Richmond v. Tacoma R.
& Power Co.*, 67 Wash. 444, 122 Pac. 351.

In the record before us, as we have said, there is no direct
evidence that disputes the appellant's claim that it is a
holder of the note in suit in due course. There are, however,
circumstances which seemingly dispute the claim, and which
to our minds justified the court in submitting the question to
the jury. The appellant is a banking corporation, doing
business at Minneapolis, Minnesota, the place of business of
the endorsers of the note. It has heretofore extended, and is

now extending, credit to such endorsers, as the exigencies of their business requires, in large sums of money.  The extracts from its account books show that the account of the endorser varies from day to day as they draw therefrom and add thereto, and that this note was collateral to the general account.  There is no evidence that the endorsers are insolvent; on the contrary, the inference from the record is that they are carrying on an extended and profitable business. The appellant knew well the character of the business the endorsers were conducting.  It knew the purported consideration of the note, and knew, prior to the commencement of their action thereon, that the makers of the note claimed that the note was procured of them by fraud and that there was a want of consideration for it.  Yet, instead of pursuing the endorsers of the note who are within the state in which it conducts its business, it chose to pursue the makers of the note in a distant state, after knowledge that such makers had no moral obligation to pay it, and knowing that any sum they might succeed in collecting from such makers would inure to the credit of the very persons who fraudulently procured the execution of the note.

Again, the witnesses by which it was sought to show the good faith of the transaction were interested in the result of the action.  One of them was the very person who perpetrated the fraud on the makers of the note, and the only other who seems to have had personal knowledge of the transaction was the secretary and treasurer of the appellant. While interest in the result of an action does not necessarily spell untruthfulness, it is a circumstance to be considered when the court is asked to hold, as a matter of law, that the evidence of such witnesses conclusively establishes a given proposition.  *Ireland v. Scharpenberg*, 54 Wash. 558, 103 Pac. 801.  We conclude, therefore, that the court did not err in submitting the question of the appellant's good faith to the consideration of the jury; and in so concluding, we

are estopped to inquire into the conclusiveness of their verdict.

On the delivery of each of the horses, the vendors sent to the vendees a writing guaranteeing that the stallion described therein would "get sixty per cent of the producing mares with foal, with proper care and handling," and if he did not do so that they would replace him with another stallion of the same breed and price. The writing also contained the further provision to the effect that the foregoing was the only contract, guarantee, or representation made by the vendors, and was "not to be changed or varied from by any promises or representations by the agent." The appellant contends that the remedy of the respondents was confined to the terms of this bill of sale or guaranty, and that they cannot be heard to urge any defense to the note itself. But the defense to the note was fraud in its inception, and because of the fraud, a want of consideration for the note; and clearly, under this defense, the respondents were entitled to show the worthless character of horses for the purposes for which they were purchased, notwithstanding the terms of the guaranty may have included another remedy. In other words, the guaranty was accepted on the theory that the vendors of the horses were acting honestly and in good faith, and when the respondents discovered otherwise, they could lawfully repudiate the transaction.

Error is also predicated on the rulings of the court in admitting and refusing to admit evidence, and on the instructions given to the jury, and the refusal to give certain requested instructions. These claims of error we have examined, and do not find that they merit a special review. Many of the errors in admitting evidence are based upon a different theory of the nature of the action from that taken by the trial court and are sufficiently answered by our discussion of the more general questions. So, also, with the instructions given by the court. Errors that may be of a

different class contain nothing requiring a new trial of the action.

The judgment is affirmed.

CROW, C. J., MORRIS, ELLIS, and MOUNT, JJ., concur.