[No. 12198.   Department Two.   April 6, 1915.]

H. B. Schroeder *et al.*, *Appellants*, v. Hotel Commercial Company, *Respondent*.[1]

Evidence—Demonstrative Evidence—Admissibility—Discretion of Court. In an action for installments due on the price of an electric piano, in which there was a counterclaim seeking rescission of the contract on the ground of false and fraudulent representations in its procurement, it was not error to permit the presence of the piano, nor of a new piano action, in the court room for the purpose of illustrating expert evidence as to its condition, showing wear to pedals, keys, hammers, and internal mechanism, where there was testimony showing the character and extent of the use of the instrument between the date of purchase and time of trial.

Evidence—Parol Evidence—Fraud. In an action to recover the price of an instrument sold under a written contract, to which a counterclaim setting up fraud in the procurement of the contract had been interposed, parol evidence is admissible for the purpose of showing the fraudulent inducement, and it is not open to the objection that it is evidence of verbal representations tending to vary the terms of a written instrument.

Appeal and Error—Questions Reviewable—Instructions. Error cannot be assigned upon instructions to a jury, where the action was of equitable cognizance and the court took the verdict as merely advisory and made complete findings on which it based its decree.

Appeal and Error—Findings—Conclusiveness. The findings of the trial court will not be set aside on trial *de novo* in the supreme court, when they are sustained by a decided preponderance of the evidence.

Sales—Contracts — Rescission by Buyer — Acts Constituting. A finding that defendant rescinded a contract for the purchase of an electric piano is sustained by the evidence, although there was no formal rescission by a return of the instrument, when it appears that this was due to promises of plaintiffs to put the instrument in good condition, and also to subsequent negotiations looking to an exchange for another instrument; that, from the time of its first delivery, defendant insisted that the instrument did not comply with the representations which induced the contract, and refused to make additional payments on that ground, which in itself was sufficient to constitute notice of rescission.

[1]Reported in 147 Pac. 417.

SALES—RESCISSION—WAIVER. Delay in formal rescission, induced by promises of the vendor of an instrument to make it work properly, is not a waiver of the right to rescind.

JUDGMENT—PARTIES — ASSIGNEE FOR COLLECTION—PERSONAL JUDGMENT. The entering of judgment, on rescission of a contract, against an assignee for collection is not error, where the only personal judgment entered against him was for the costs of the action.

JUDGMENT—PERSONS NOT PARTIES—REAL PARTY IN INTEREST. A judgment against one not named as a party to the action is not erroneous, where the court finds that the plaintiff was an assignee merely for collection; that the party against whom judgment was rendered was the real party in interest; that it was represented in the action by its agents who were paid by it; and that it actually participated in the trial, though not a nominal party; since one not a technical party is bound by the decree if he be interested in the subject-matter of litigation and has exercised the right to participate.

Appeal from a judgment of the superior court for Yakima county, Grady, J., entered November 29, 1913, after a trial before the court and a jury, in an action on contract. Affirmed.

*Marx & Conger*, for appellants.

*Wende & Taylor*, for respondent.

ELLIS, J.—The plaintiff, Schroeder, as assignee for collection, brought this action to recover from the defendant unpaid installments on the purchase price of an electric piano, known as a "Welte Mignon," sold on conditional sale by Eilers Music House to the defendant. The facts are these:

In August, 1911, Schroeder was the manager of the North Yakima branch of the Eilers Music House, a corporation. About that time, Hitchings and Harrah, officers and chief owners of the defendant company, desiring to purchase some kind of automatic music instrument for use in their hotel, opened negotiations therefor with Schroeder. He had nothing in stock meeting their desire, and it was agreed that the three would look through the stock of Eilers Music House in Seattle, which they accordingly did on August 28, 1911.

One Hopper, manager of the Seattle house, showed them, among other automatic instruments, the one here in question. He represented that the Welte Mignon was an automatic piano the mechanism of which was made in Freiburg, Germany; that it differed from others in that it reproduced not only the notes, but the expression, style and mannerism of the artist who played the selection to produce the record; that it reproduced the playing of a given selection on the same principle that a phonograph reproduces the singer's voice. Neither Hitchings nor Harrah had any knowledge of musical instruments and, as the evidence shows, both were especially ignorant of instruments of this character. The operation of the instrument was demonstrated to them for something over an hour, during which time two or three selections were played. The mechanism was exposed and to some extent explained, but it is clear that none of the defects from wear, which afterwards developed, were pointed out to Hitchings or Harrah. Hitchings remarked that the case looked cloudy as if it had been used. Harrah remarked that the silk lining in the front of the case had rotted away. Hopper then informed them that the piano had been used for demonstration purposes at the Alaska-Yukon-Pacific Exposition, and since in the storeroom of the music house, but that it would be cleaned and polished and put in perfect order before being shipped. Hopper himself further testified:

"And I also assured them that the condition of the instrument was absolutely first class so far as the interior mechanism was concerned. It was not worn, it was not in bad condition, the keyboard was not yellow and the instrument itself was in good condition and for all intents and purposes to the purchaser should play just as well as new."

Hitchings and Harrah remarked that the instrument played too loudly and irregularly, but were informed that this was caused by an improper adjustment of the electric current by which the piano was operated. Finally, it was agreed that the defendant hotel company would purchase

the piano, receiving a small reduction on the regular price. Four hundred dollars was paid down upon the purchase price and it was agreed that the balance, amounting to $1,450, should be paid in installments. A conditional sale contract was drawn up and signed by the defendant company by Hitchings, its manager. This contract described the instrument as a "Welte Mignon," made no reference to it as an old, used or second-hand instrument, and provided that "any agreement other than expressed on the face of this note will not be recognized." It was admitted, however, that it was agreed at the time and as a part of the same transaction, that the instrument would be put in first class condition and all of the apparent defects remedied.

Early in September, 1911, the instrument was installed in the dining room of defendant's hotel at North Yakima, but the evidence shows that it failed to operate satisfactorily, that it produced loud and discordant notes, that it was used less than three months, being operated almost wholly by electrical current and seldom by hand; that the Eilers Music House sent an expert to remedy the defects, who remained in North Yakima for several days, but failed to materially or permanently remedy the defects; that the defendant company finally abandoned its use altogether. It also appears that the defendant's officers entered into negotiations with Schroeder for an exchange of the instrument for another, and that Schroeder, claiming that the matter would have to be referred to the head officers of the company, told them to pay no attention to the requests for payment of the installments falling due on the purchase price pending such negotiations. Finally, about the first of March, 1913, the defendant absolutely refused to make further payments, and the plaintiff brought this action to recover the balance of the purchase price. The defendant filed a cross-complaint seeking rescission of the contract on the ground that it was procured through false and fraudulent representations.

The cause was tried to the court and jury. A verdict was returned in favor of the defendant, but the court, after some days' consideration, concluded to treat the verdict of the jury as merely advisory, made complete findings of fact and conclusions of law, and entered a decree in favor of the defendant. Upon its own motion, the Eilers Music House was made a party plaintiff for the purpose of participating in this appeal.

I. The appellants claim that the court erred in permitting the presence of the piano in the courtroom during the trial and its use in illustrating the testimony of witnesses, on the ground that there was no evidence that its condition was at the time of the trial, November, 1913, the same as at the time of purchase. There was, however, evidence of the character and extent of the use of the instrument in the meantime. Hitchings testified that it was used for an hour each day at lunch and dinner for two or three weeks, that it was used very little after that, and within a month or two its use was discontinued altogether. That this was its only use, except a few times it was played by hand as an accompaniment to a violin. Expert evidence as to its condition, showing wear to pedals, keys, hammers and internal mechanism, which could not have resulted from such limited intermediate use, was also introduced. We are satisfied that both the court and the jury were better able to understand this testimony and to determine the probable condition of the instrument at the time of the sale with the machine itself before them than they would have been by the unillustrated testimony. Courts are permitted a wide discretion in the use of illustrative aids such as pictures, models and machines. *Harris v. Seattle, Renton & S. R. Co.*, 65 Wash. 27, 117 Pac. 601. This is a common practice, especially where questions of mechanism are involved. We find no error in the use of this machine, or in permitting its presence in the courtroom.

A kindred objection is advanced touching the use of a new piano action as illustrative of the testimony of an expert witness as to the difference between an old and a new action. What we have said of the use of the piano in issue sufficiently disposes of this objection.

II.   It is contended that the court erred in admitting evidence of representations in the nature of warranties not contained in the written contract and in instructing the jury thereon, though it is asserted that the case was tried throughout upon the theory of fraud.   We pass the manifest paradox in the claim that evidence and instructions were admitted and given on the theory of warranty while the case was tried throughout on the theory of fraud.   Both claims, of course, could not be true.   The ground of appellants' contention seems to be that the evidence of verbal representations in the nature of warranties made prior to the execution of the contract was inadmissible as tending to vary the terms of the writing itself.   The case of *Eilers Music House v. Oriental Co.*, 69 Wash. 618, 125 Pac. 1023, is cited as a parallel case sustaining this contention.   That case, however, presented wholly different issues from those presented here.   In that case, the action was in the nature of replevin to recover an instrument sold on conditional sale contract similar to that here involved.   The defendant admitted the making of the contract, but set up a counterclaim for damages on the ground that the instrument failed to meet certain alleged verbal warranties.   No rescission of the contract on the ground of fraud was sought.   No purely equitable defense was interposed.   We held that verbal representations amounting to specific warranties were not admissible in evidence because not in the written contract.   The trial court, however, did admit evidence of certain defects, on the ground that there was an implied warranty that the instrument was adapted to the purposes for which it was sold.   We held, however, that the counterclaim was properly dismissed, not because this evidence was improperly admitted, but because there was

no evidence that the defects complained of had resulted in monetary loss or measurable damage.

The case of *Smith v. Bolster*, 70 Wash. 1, 125 Pac. 1022, was likewise defended on the ground of specific warranties, and a counterclaim for damages was interposed. No misrepresentation as to the amount of use to which the car there in question had been subjected was claimed. No rescission for fraud was sought.

In the case before us, the action was not to recover the possession of the instrument, but to recover the balance of the purchase price, the appellant thus waiving the right of possession for breach of the contract. The answer did not set up a counterclaim for damages for breach of warranties either express or implied, but sought by cross-complaint a rescission for failure of the instrument to comply with the conditions of the sale, namely, that the contract itself described the instrument as a Welte Mignon when it was not in fact, though so represented, and on the further ground of fraudulent misrepresentations inducing the sale, to the effect that the instrument, though not new, had only been used for demonstration, and that certain loud and discordant notes were not due to wear but to the use of an alternating electric current and would disappear when a direct current was applied.

When the court overruled the appellants' objection to the introduction of oral evidence in support of the cross-complaint he clearly noted the true distinction. He said, "The court construes the cross-complaint to be based upon rescission upon the ground of false representations of material facts inducing the making of the contract." This construction of the cross-complaint was clearly correct. The issue of inducing fraud, thus presented, opened the door to parol testimony as to the whole transaction, regardless of the fact that the resulting contract was in writing. This is elementary.

We shall not review the instructions further than to say that they contain no material error. In any event they are of no controlling importance here. The trial court took the verdict as merely advisory, treating the case as one in equity, made complete findings and based its decree thereon. No error is assigned upon this treatment of the case. It is here for trial *de novo* as other actions tried to the court. The instructions, whether right or wrong, cannot have any material bearing upon the result.

III. It is next contended that the court's findings generally were not sustained by the evidence. The court found, in substance, that the officers of the cross-complainant were wholly ignorant of the construction and operation of electric pianos; that during the negotiations looking to the sale, they noticed from the case and the lining of the face that it did not appear to be a new piano, and noticed that it did not play properly; that upon these things being indicated, the agent of Eilers Music House in Seattle, in the presence of Schroeder, represented that while not a new piano, it had only been used for the purpose of demonstration to prospective purchasers and to the public in the salesroom of the music house and at the Alaska-Yukon-Pacific Exposition, and that "the piano was practically to all intents and purposes à new piano;" that these representations were made for the purpose of inducing the purchase, were relied upon by the cross-complainant as being true, and induced the making of the written contract of purchase; that when delivered the instrument failed to play properly and an expert, sent by the Eilers Music House to adjust it, failed to make it play properly, but on the contrary it continued to play so loudly and discordantly that it was useless for operation in the dining room; that it was used for about three months during the noon and evening meals and occasionally at night, almost entirely by mechanical operation; that its usage by the cross-complainant was not such as to cause any of the defects found by the court to exist; that the pedals were worn, show-

ing that the instrument had been much operated by hand;
that the keyboard was out of alignment and the keys some-
what discolored; that the original name on the fall board
had been almost completely obliterated by scratching the
finish at that point, and the original name covered by a plate
upon which appeared the name "Welte & Sons;" that the
bellows contained holes and was worn in the creases; that one
of the two air tubes had been removed and replaced by a tube
of different material and design from the original; that at the
time of the purchase, none of these defects were observed by
the officers of the cross-complainant, because of their lack of
experience touching such instruments; that the instrument
had received, prior to the sale, much harder usage and was in
a much more worn condition than it would have been had it
only been used for the purpose and to the extent represented,
and that it was, at the time of the trial, in practically the
same condition as when it was first delivered to the cross-
complainant.

We have read the abstract and supplemental abstract of
record with frequent recourse to the statement of facts. Any
detailed discussion of the evidence would extend this opinion
to prohibited length. It must suffice to say that we are con-
vinced that the court's findings are sustained by the decided
preponderance of evidence.

IV.   It is also contended that the court's finding to the
effect that the respondent rescinded the contract is not sus-
tained by the evidence. While there was no formal rescission
by an actual return of the instrument prior to the commence-
ment of the action in March, 1913, the evidence makes it clear
that the promises of the appellants to put the instrument in
good condition and the subsequent negotiations looking to
an exchange for another instrument was the sole reason for
the respondent's retention of this piano. In fact the evidence
makes it clear that there was never more than a conditional
acceptance of this instrument. From the time of its first de-
livery the respondent insisted that the instrument did not

comply with the representations· which induced the contract, and refused to make any additional payments on that ground. This in itself was, under the circumstances, a sufficient notice of a rescission. It is too clear for doubt that any offer to return the piano would have been refused.

Diligence in rescission is always a relative question. What is laches in a given case is always dependent upon the particular circumstances. *Thompson v. Rhodehamel,* 71 Wash. 24, 127 Pac. 572; *Freeman v. Gloyd,* 43 Wash. 607, 86 Pac. 1051. Delay in formal rescission, induced by promises of the vendor to make machinery work properly, is not a waiver of the right to rescind. *Crabtree v. Potts,* 108 Ill. App. 627; *McCormick Harvesting Mach. Co. v. Dodkins,* 24 Ky. Law 2306, 73 S. W. 1129; *Laumeier v. Dolph,* 145 Mo. App. 78, 130 S. W. 360; *Wood Mowing & Reaping Mach. Co. v. Calvert,* 89 Wis. 640, 62 N. W. 532; *Fuller v. Chenault,* 157 Ala. 46, 47 South. 197.

V. It is next urged that the court erred in entering judgment for the $400 paid upon the contract against the plaintiff Schroeder who was only an assignee for collection. It is asserted that the "plaintiff was not liable in any event for more than the costs of the action." The answer to this contention is that no personal judgment was entered against the plaintiff except for costs.

VI. Finally it is contended that the court erred in entering any judgment against the Eilers Music House because that corporation was not a party to the action. The court found that the plaintiff was an assignee merely for collection; that the Eilers Music House was the real party in interest; that it was represented in the action by its agents who were paid by it; and that it actually participated in the trial though not a nominal party to the action. This finding was excepted to, but its correctness ·is not questioned in appellants' brief or argument. It is amply supported ·by the record. Upon its own motion the Eilers Music House was made a party to this appeal. The trial here is *de novo.*

Every party in interest is now before this court. There is no pretense that the Eilers Music House, had it been a nominal party throughout, could have advanced anything further in its behalf than has been presented. To compel the respondent to again litigate this transaction with that company would be a manifest injustice. We have often held that a person, though not a technical party to the action, is bound by a decree if he be interested in the subject-matter and has exercised the right to participate in the litigation. *Douthitt v. MacCulsky*, 11 Wash. 601, 40 Pac. 186; *Shoemake v. Finlayson*, 22 Wash. 12, 60 Pac. 50; *American Bonding Co. v. Loeb*, 47 Wash. 447, 92 Pac. 282; *Kibler v. Maryland Casualty Co.*, 74 Wash. 159, 132 Pac. 878.

The court decreed that the contract be cancelled, that the respondent have an equitable lien upon the piano for the $400 paid thereon, with interest from August 28, 1911, until the same be paid by the plaintiff or Eilers Music House, that upon such payment the piano be delivered to the plaintiff or the Eilers Music House, and that upon failure of such payment within thirty days from the date of. judgment the respondent might foreclose its lien upon the piano.

Upon a careful consideration of the whole record, we are satisfied that the decree should be affirmed. It is so ordered.

FULLERTON, MOUNT, MAIN, and CROW, JJ., concur.