[No. 32481. Department Two. March 29, 1954.]

VIRGIL A. NYQUIST, *Respondent*, v. LLOYD FOSTER *et al.*,
*Appellants.*[1]

[1]Reported in 268 P. (2d) 442.

*Henry C. Perkins*, for appellants.

*Goodwin & Hicks*, for respondent.

FINLEY, J.—Virgil Nyquist brought this action to rescind the sale of a trailer which he purchased from appellants, Lloyd Foster and Alice H. Foster, doing business as the Sparlux Sales Company. The trial court, sitting without a jury, held that the sale had been induced by fraudulent misrepresentation, and that Nyquist was entitled to rescission.

Foster is a dealer for the Sparton Aircraft Company, a manufacturer of trailers. In the fall of 1951, Nyquist, desiring to buy an aluminum sidewall trailer, called at Foster's place of business in south Tacoma. At that time, Foster had no aluminum trailers for sale, but endeavored to interest Nyquist in a masonite sidewall trailer. Nyquist was reluctant to purchase anything but an aluminum trailer, and expressed his concern that the masonite sidewalls might buckle and warp. He visited Foster's place of business at least eight times before he signed an order for a trailer. On at least four occasions, he asked Foster whether the masonite sidewalls would buckle or warp. In reply, Foster explained that the Spartan Aircraft Company had spent thousands of dollars in research and had developed a process for treating the masonite, preventing it from warping. He showed Nyquist a pamphlet describing the process.

. Nyquist testified that Foster "definitely stated that it would not warp, absolutely." Mrs. Nyquist corroborated this testimony of her husband. Foster admitted that Nyquist had asked him *directly* if the trailer would warp or

buckle. Foster denied that he had answered directly. According to his testimony, Foster had made a somewhat oblique reference to the process used to fortify the masonite and the warranty of the manufacturer. In this connection, it should be mentioned that the trial court found that Foster had said the trailer would not warp.

On January 4, 1952, Nyquist paid $3,500 down, and signed a conditional sale contract for the balance due on a masonite sidewall trailer. Three days after delivery of the trailer to Nyquist, the masonite sidewalls began to warp and buckle. The warping continued, but varied in degree according to the weather. At times the masonite warped as much as two inches between the ridges and the depressions. Foster testified that it would cost three hundred to four hundred dollars to replace each sidewall.

Nyquist reported the warping to Foster and demanded a new trailer. The manufacturer was notified. After some delay, two factory field representatives called on Nyquist. At that time, Nyquist demanded that his money be returned. The representatives asked him if he desired to have the trailer repaired and he answered that he did not. (At the trial, he explained his position by saying he had purchased a new trailer and did not desire a remodeled one.) There was a conflict between the testimony of Nyquist and Foster as to whether the factory representatives offered to replace the trailer. The representatives were not present to testify.

On February 14, 1952, Nyquist made written demand for the return of his money and, shortly thereafter, had the trailer hauled to Foster's trailer yard, where it was left.

Nyquist had made one payment of sixty-six dollars in February. In May, after an unsuccessful demand for payments had been made by the Mennehome Financial Company (assignee of the conditional sales contract), Foster repurchased the contract. Later in the same month, he resold the trailer as a used one.

The first major contention of appellants relates to a clause, inserted in both the written order and in the conditional sales contract, disclaiming all "warranties, express or im-

plied, representations, promises or statements" made by the seller, except those endorsed thereon. Appellants argue that, because of this clause, the trial court erred in admitting evidence that Foster had made a warranty. Appellants also contend that this clause in the contract expressly prevents any cause of action, based upon parol warranties or representations, from arising.

 The argument assumes that respondent's action is based upon breach of a contractual warranty. It is clear, however, that respondent's theory, both in the trial court and here, is that of fraudulent misrepresentation. A contention nearly identical to appellants' contention was presented to this court in *Producers Grocery Co. v. Blackwell Motor Co.*, 123 Wash. 144, 212 Pac. 154. Therein it was said:

"It is claimed by appellants that the oral testimony with reference to the representations alleged to have been made by the appellant Solberg was not admissible because it tended to vary and contradict the terms of the written order. If the oral testimony had been with reference to oral warranties, then the rule contended for by appellants would be applicable, but it is inapplicable as against testimony tending to show fraud or false representations which were relied upon and which entered into the making of the contract of purchase. Fraud vitiates everything it touches and is not merged in the written contract. *Schroeder v. Hotel Commercial Co.*, 84 Wash. 685, 147 Pac. 417; *Wells v. Walker*, 109 Wash. 332, 186 Pac. 857; 22 C. J. 1215; 10 R. C. L. 1058."

See, also, *Peoples Bank & Trust Co. v. Romano Eng. Corp.*, 188 Wash. 290, 62 P. (2d) 445; *Weller v. Advance-Rumely Thresher Co.*, 160 Wash. 510, 295 Pac. 482; 3 Williston on Sales 435, § 631b.

Appellants' principal assignments of error, directed to the findings of the trial court on the issue of fraud, challenge three essential findings, summarized as follows:

(1) That appellant, Lloyd Foster, said the masonite sidewalls would not warp;

(2) That respondent relied on the statement; and

(3) That the warping caused material damage to the trailer.

■ Respondent's unequivocal testimony, as well as that of his wife, support the finding that the representation was made.

On the question of reliance, respondent testified that, without the assurance from appellant Foster that the masonite would not warp, he would not have purchased the trailer. This testimony was strengthened by the admissions of appellant Lloyd Foster that respondent first tried to buy an aluminum trailer, and only after extended inquiries and explanations concerning the qualities of masonite did he agree to buy a trailer with masonite sidewalls.

On the issue of damage, appellants admitted that the trailer warped rather badly and that the factory representatives believed an adjustment was in order. Appellant Lloyd Foster testified that replacement of the sidewalls would cost from three hundred to four hundred dollars per side. Having admitted all of this, his testimony that the warping later cleared up (subsequent to respondent's demand for rescission and the return of the trailer) does not effectively impeach the finding that the warping caused material damage. This improvement in the warping may have been due to improved weather, so far as the evidence reveals. The susceptibility of the trailer to warping was not a disputed fact.

There was clear, cogent, and convincing evidence to support all of the findings of the trial court which pertained to fraudulent misrepresentation.

Appellants next challenge the conclusion of law "That the plaintiff was entitled to rescind the contract of sale . . ." They cite *Webster v. Romano Engineering Corp.*, 178 Wash. 118, 34 P. (2d) 428, which sets out the nine essential elements of fraud. It is argued that three of these elements were not established. Of these, the elements of reliance by the buyer and his damage have been disposed of above. But appellants vigorously contend that, even if the trial court's finding, that "Foster said they [the masonite sidewalls] would not warp," is correct, the statement did not relate to

an existing fact; and hence, the first element necessary to establish fraud is not present.

It is apparent that a statement of the kind attributed to Foster may be considered as one relating to either (a) a future event, or (b) an existing fact. Under one view, the statement or representation as to warping might pertain to a future time, since no warping existed when the trailer was sold. In another and different sense, the statement or representation might be understood to mean that the masonite sidewalls, at the specific time the statement was made, were so constructed, or of a composition, or so processed, that they possessed a characteristic or quality making them immune to warping; that is, the masonite walls possessed a then existing capacity to successfully resist moisture and other climatic conditions which tend to cause warping.

It is helpful to consider the reasons supporting the usual rule that fraud can be predicated only upon representations of existing fact. Among the several reasons stated by authorities are the following: (a) A statement as to future performance is a "mere estimate" of something to take place in the future; *Tacoma v. Tacoma Light & Water Co.*, 16 Wash. 288, 47 Pac. 738; (b) ". . . a representation that something will be done in the future, or a promise to do it, from its nature cannot be true or false at the time when it is made;" 23 Am. Jur. 799, 801, § 38; See, also, *Rankin v. Burnham*, 150 Wash. 615, 274 Pac. 98; and (c) " . . . were the rule otherwise, any breach of contract would amount to fraud; and that to permit a rescission for fraud by one who has no ground for complaint except an unfulfilled promise—a broken contract—would obscure elementary distinctions between remedies, and tend to nullify the Statute of Frauds." 51 A. L. R. 46, 61, Annotation.

It seems apparent that the foregoing considerations are applicable to representations which are mere opinions, or to those which are promissory and in the nature of an undertaking by the promisor in an executory contract.

It would seem that the proper test to apply, to determine whether or not a particular representation is of

existing fact, would be as follows: Where the fulfillment or satisfaction of the thing represented depends upon a promised performance of a future act, or upon the occurrence of a future event, or upon particular future use, or future requirements of the representee, then the representation is not of an existing fact. Thus, in *Andrews v. Standard Lumber Co.*, 2 Wn. (2d) 294, 97 P. (2d) 1062, we held that representations by a lumber company to a prospective home builder that by the use of a construction plan contract he could have constructed a house for a specified price, free of liens, did not relate to existing fact. The fulfillment of the representations there depended upon a future performance by both the lumber company and a contractor. In *Holland Furnace Co. v. Korth*, 43 Wn. (2d) 618, 262 P. (2d) 772, we said that a statement that an article will meet the buyer's requirements will be regarded as an expression of opinion about something to take place in the future.

On the other hand, *a statement is one of existing fact*, if a quality is asserted which inheres in the article so that, at the time the representation is made, the quality may be said to exist independently of future acts or performance of the one making the representation, independently of other particular occurrences in the future, and independently of particular future uses or future requirements of the buyer. Thus, in *Peoples Bank & Trust Co. v. Romano Eng. Corp.*, *supra*, we said the statement or representation,

" ' . . . that they *were using them* [motor trucks] *all over the United States for dump trucks . . . this engine would develop more power than the GL 6 Buda motor that was on the trucks . . . ,* ' "

is of an existing fact.

It will be noted in the *Romano* case that the representation that an engine would develop more power than another particular engine then in existence depended neither upon a future promised act or event, nor upon the future requirements of the buyer.

In the instant case, the statement or representation related to a present or then existing condition, which in-

hered in the material at the time the statement was made. There was no promissory act of the seller stated. The quality asserted did not relate to a particular use to which the trailer would be put, nor to any other future occurrence. The statement was one of existing fact, upon which fraud may be predicated.

Appellants finally assert that the rights of respondent under the manufacturer's express warranty are adequate and hence preclude recovery in an equitable action for rescission based upon fraud. Assuming that the defect in the trailer was covered by this warranty, the conclusion advanced by appellants does not follow. The express warranty provides:

"The manufacturer warrants each new Spartan Aircraft Trailercoach, manufactured by it, to be free from defects in material and workmanship, under normal use and service, its obligation under this warranty being limited to making good at its factory any part or parts thereof, which shall within ninety (90) days after making delivery of such trailercoach to the original retail purchaser be *returned to the factory at Tulsa, Oklahoma, with transportation charges prepaid and which its examination shall disclose to its satisfaction to be thus defective*; . . ." (Italics ours.)

This warranty was skillfully drafted to limit the liability of the Spartan Aircraft Company. Assuming that the condition of the trailer could be said to constitute a defect in material to the satisfaction of the field representatives of the Spartan Company, the respondent would still be obliged to ship the trailer to Tulsa, "transportation charges prepaid," in order to take advantage of the warranty. This would involve both a substantial outlay of money and a loss of use of the trailer for a considerable time.

Proof of fraudulent misrepresentations by a seller entitles a buyer to rescind the contract of sale and to recover the money paid on the contract. A party cannot be deprived of this equitable action by pointing to other somewhat dubious possibilities of relief as might be provided by the manufacturer's contract warranty on this trailer.

In view of the above discussion and our opinion that the trial court was correct in concluding that the respondent

was entitled to rescission, it is unnecessary to discuss appellants' assignments of error to the findings and conclusion of the trial court that there was a rescission in fact. Nor is there any merit in any of appellants' other assignments.

The judgment of the trial court is affirmed.

GRADY, C. J., SCHWELLENBACH, HAMLEY, and DONWORTH, JJ., concur.