[Nos. 34730, 34731.   *En Banc.*   June 2, 1960.]

ALEXANDER HAAGEN et al., *Appellants,* v.
JAKE LANDEIS et al., *Respondents.*
ALEXANDER HAAGEN et al., *Appellants,* v.
DALE WRIGHT et al., *Respondents.*[1]

[1]Reported in 352 P. (2d) 636.

*Nashem & Dobbs,* for appellants.

*Velikanje & Moore* and *Paul M. Goode,* for respondents.

OTT, J.—The defendants signed contracts for advertising space with National Business & Property Exchange, Inc. (hereinafter referred to as the corporation), and, after the advertisements had been published, refused to pay for them. These actions to recover the contract price were brought by the successors of the corporation. The trial court found that the contracts had been procured by fraud and entered judgments for the defendants. The plaintiffs appeal.

The cases were consolidated on appeal. The *Landeis* case only will be discussed herein and, because the questions presented are identical, the *Wright* case will be governed by the result.

The contract for the advertising space provided:

"DISPLAY SERVICE AGREEMENT
"NATIONAL BUSINESS & PROPERTY EXCHANGE, INC.
"5410 Wilshire Boulevard
"Los Angeles 36, California
"Gentlemen:
"I hereby reserve one-eighth (⅛) page of display advertising space in NATIONAL BUYERS' GUIDE, commencing with your next issue subject to your publication schedule on

the reverse side of this Agreement. You will publish in this space an advertisement prepared from the copy which I have approved on the accompanying survey form.

"For such reservation of space, I will pay you the sum of $275.00 at Los Angeles, California, forty-five (45) days from the date of your acceptance of this Agreement. However, if I do enter into an agreement to sell, lease, or exchange this business or property before the expiration of said forty-five (45) day period, I will pay the above mentioned sum immediately. If you commence legal action hereon, I agree to pay, in addition, a reasonable attorney's fee. I understand that you make no guarantee that I shall sell, lease or exchange this business or property.

"This Agreement shall become effective only when accepted at your office in Los Angeles, California. You shall notify me of such acceptance by letter.

"This Agreement contains the entire understanding between us and no representation or inducement has been made that is not set forth herein."

The execution of the "display service agreement" by the respondents was induced by Paul Kirker, the regional representative of the corporation. In order to persuade the respondents to sign the writing, he represented to them that the forty-five day payment provision, to which they objected, was only a formality; that the company would not insist on it, and that the respondents would not have to pay for the advertising space until their property was sold. Respondents would not have signed the writing except for these representations. It was on the basis of the representations as to when payment would be required that the trial court found fraud in the procurement of the contract.

Appellants' principal assignment of error relates to the sufficiency of the evidence to sustain a finding of fraud, and the court's failure to grant appellants' motion for judgment notwithstanding the decision of the court.

The nine essential elements of fraud, all of which must be established by clear, cogent, and convincing evidence, are: (1) A representation of an existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity, (5) his intent that it shall be acted upon by

the person to whom it is made, (6) ignorance of its falsity on the part of the person to whom the representation is addressed, (7) the latter's reliance on the truth of the representation, (8) his right to rely upon it, and (9) his consequent damage. *Graff v. Geisel,* 39 Wn. (2d) 131, 234 P. (2d) 884 (1951); *Gray v. Wikstrom Motors,* 14 Wn. (2d) 448, 128 P. (2d) 490 (1942).

■ The respondents failed to establish the element designated as (8), namely, their right to rely upon the representations. The "display service agreement" provided, *inter alia*: "This Agreement contains the entire understanding between us and no representation or inducement has been made that is not set forth herein." The quoted provision made it clear that all representations or inducements must be contained in the writing itself, and that respondents had no right to rely upon any representation or inducement not included therein. The oral representations upon which respondents relied were not contained in the agreement and, in fact, contradicted the plain and unambiguous provisions thereof. Therefore, the respondents had no right to rely upon the oral representations. See *Kelley v. von Herberg,* 184 Wash. 165, 50 P. (2d) 23 (1935).

The trial court erred in finding fraud.

Respondents contend that Kirker had apparent authority to modify the contract with regard to payments.

■ In *Codd v. New York Underwriters Ins. Co.,* 19 Wn. (2d) 671, 680, 144 P. (2d) 234 (1943), we stated the rule relative to apparent authority as follows:

"The rule that, in the determination of the question whether an agent acts within the apparent scope of his authority, the acts of the principal alone and not the acts of the agent are to be considered, needs no citation of sustaining authority.

" 'The principal is responsible only for that appearance of authority which is caused by himself, and not for that appearance of conformity to the authority which is caused by the agent.' *Bowles Co. v. Clark,* 59 Wash. 336, 340, 109 Pac. 812, 31 L. R. A. (N. S.) 613."

■ Applying the rule to the instant case, the "appearance of authority" caused by the principal was clearly lim-

ited by the writing which the principal had prepared for the use of prospective purchasers. The limit of the agent's authority, as shown by the writing, was to obtain a written offer. When the respondents signed the writing upon the terms indicated, it was nothing more than *their* offer to purchase the advertising. The acceptance by the corporation of the respondents' written offer created a binding contract upon the terms stated therein. The writing specifically stated that "This Agreement contains the entire understanding between us." The principal thereby effectively gave notice to prospective purchasers of the advertising service regarding the limitation upon its agent's authority to make contracts in its behalf. This written limitation conclusively negatives the alleged apparent authority of the agent to modify the agreement orally.

■ Finally, respondents contend that the corporation ratified the agent's oral modification of the agreement inasmuch as it had been notified of the agent's representations before the service was furnished. We find no merit in this contention. There was no notice before acceptance. Two or three days after the corporation received respondents' notice of the agent's alleged representations, it received the following letter from them: "This note is [to] cancel expressed misunderstanding recently sent you. Please continue service on regular schedule." The letter withdrew respondents' previous objections to the contract as written and requested performance as provided therein.

The judgments are reversed, and the causes remanded with instructions to enter judgments for the appellants.

WEAVER, C. J., HILL, and DONWORTH, JJ., concur.

MALLERY, J., concurs in the result.

FINLEY, J. (dissenting)—Following the lead of the majority, I, too, shall limit my discussion to the *Landeis* case, and hereinafter shall refer to Mr. and Mrs. Landeis as the respondents. It is undisputed that, on February 29, 1956, respondents signed the written document set forth verbatim in the majority opinion and denominated "Display Advertising Agreement." On its face, this writing appears to be an offer to purchase advertising space in *The National*

*Buyers' Guide*, published by the appellants' predecessors. The writing further contains a recital that the offerer promises to pay the sum of $275.00 to the offeree forty-five days from the date of acceptance of the offer. The promise contained in the written offer is in no manner conditioned upon the success or failure of the advertisement purchased in securing a buyer for the property of the respondents to be advertised.

However, it is also undisputed that the publisher's agent, Paul Kirker, told the respondents, at the time of execution of the writing, that they would not have to pay for the advertisement until and unless the property advertised was sold. But for this representation, the respondents would not have signed the writing. Neither the materiality nor the falsity of the representation is in dispute. Thus, in legal contemplation, the respondents entered into a contractual relationship (the offer being accepted by appellants' predecessor on March 5, 1956) in reliance upon a false representation of a material fact.

Thereafter, the advertisement was published in accordance with the agreement, but the respondents did not succeed in selling their property. Relying on Kirker's representation, the respondents, therefore, refused to pay; whereupon, the appellants commenced the instant action. The respondents pleaded fraud as an affirmative defense, thereby placing themselves in the position of having to prove by clear, cogent and convincing evidence each of the nine elements of fraud set forth in the majority opinion. Further, the pleading raised the question of whether, as a matter of law, fraud perpetrated by the agent, Paul Kirker, would constitute a bar to enforcement of the contract by the appellants, standing in the shoes of Kirker's principal.

Boiled down to their essentials, and in the face of the undisputed facts above summarized, the problems presented by this case turn wholly upon the legal significance to be attached to the fact that the written document, executed by the respondents in reliance upon Kirker's false representation, contained a so-called "merger clause," reading as follows:

"This Agreement contains the entire understanding between us and no representation or inducement has been made that is not set forth herein."

The majority take the position that this clause imparted notice of the actual limits of Kirker's authority and rendered the respondents' reliance upon his representations unreasonable. Therefore, they conclude, the trial court erred in holding that the respondents were not bound by the agreement. I do not agree.

In the first place, insofar as appellants' right to enforce the agreement is concerned, it is completely immaterial whether Kirker, at the time he made the misrepresentation in question, had the authority—actual or apparent—to make such a statement. This is not a case wherein the party claiming to have been defrauded by the acts of an agent is seeking to recover compensatory damages against a principal who is himself innocent of any wrongdoing. In such a case the principal may well be protected by the rule that a principal is liable only for such wrongful acts of his agent as are committed within the scope of the agent's authority. See *Dickson v. Phillips* (1924), 131 Wash. 633, 230 Pac. 630. However, in the instant case it is the principal who is the plaintiff—a principal who is seeking to reap the benefits of his agent's allegedly fraudulent representation.

Not only may a principal not enforce a contract which was induced by his agent's fraud; but further, such a contract is unenforcible, even though the written instrument upon which the principal relies contains a merger clause repudiating any representations made by the agent which are not contained in the writing. *Holcomb & Hoke Mfg. Co. v. Auto Interurban Co.* (1923), 140 Wash. 581, 250 Pac. 34, 51 A. L. R. 39; *Producers Grocery Co. v. Blackwell Motor Co.* (1923), 123 Wash. 144, 212 Pac. 154. These two cases appear to negate the notion, set forth by the majority, that reliance on the representations of an agent, in the face of a merger clause, is unreasonable. The reason for this was rather cryptically stated by the court in the *Producers Grocery* case, *supra*, wherein we said:

" . . . Fraud vitiates everything it touches and is not merged in the written contract."

A somewhat more elaborate explanation appears in an opinion of the Texas court (*Dallas Farm Machinery Co. v. Reaves* (1957), Texas Civil Appeals, 307 S. W. (2d) 233), quoting from *Bates v. Southgate* (1941), 308 Mass. 170, 31 N. E. (2d) 551, 133 A. L. R. 1349, as follows:

" 'As a matter of principal it is necessary to weigh the advantages of certainty in contractual relations against the harm and injustice that result from fraud. In obedience to the demands of a larger public policy the law long ago abandoned the position that a contract must be held sacred regardless of the fraud of one of the parties in procuring it. No one advocates a return to outworn conceptions. The same public policy that in general sanctions the avoidance of a promise obtained by deceit strikes down all attempts to circumvent that policy by means of contractual devices. In the realm of fact it is entirely possible for a party knowingly to agree that no representations have been made to him, while at the same time believing and relying upon representations which in fact have been made and in fact are false but for which he would not have made the agreement. To deny this possibility is to ignore the frequent instances in everyday experience where parties accept, often without critical examination, and act upon agreements containing somewhere within their four corners exculpatory clauses in one form or another, but where they do so, nevertheless, in reliance upon the honesty of supposed friends, the plausible and disarming statements of salesmen, or the customary course of business. To refuse relief would result in opening the door to a multitude of frauds and in thwarting the general policy of the law.' "

See, also, *Land Finance Corp. v. Sherwin Electric Co.* (1929), 102 Vt. 73, 146 Atl. 72, 75 A. L. R. 1025, and the annotation based thereon in 75 A. L. R., commencing at page 1032.

It is my best judgment that the public policy thus expressed, and which appears to be implicit in our own decisions, *supra*, should be adhered to in the state of Washington. This, I believe, represents the most persuasive, desirable and proper judicial solution of the problem of human, business, and legal relations involved in the instant case.

I, therefore, would affirm the judgment of the trial court; consequently, I dissent.

ROSELLINI, FOSTER, and HUNTER, JJ., concur with FINLEY, J.

November 10, 1960. Petition for rehearing denied.