[No. 36497.   En Banc.   December 12, 1963.]

GEORGE COSON, *Respondent*, v. REUBEN R. ROEHL *et al.,*
*Appellants.**

*Stephen E. Chaffee* and *Kenneth C. Hawkins,* for appellants.

*Tonkoff, Holst & Hopp,* for respondent.

WEAVER, J.—Defendants appeal from a money judgment against them.   The judgment is based on an alleged breach of a written contract dated October 27, 1959.

Plaintiff sells building materials.   October 27, 1959, three of plaintiff's agents negotiated with defendants to sell them materials and labor to install ceramic siding and to reroof their residence.   The agents used an ancient sales canard:

*Reported in 387 P. (2d) 541.

when completed, defendants' residence would be a bell-wether for additional sales.[1]

Upon conflicting evidence, the trial court found (and we cannot disturb the findings): (a) defendants stated to plaintiff's agents ". . . that $3,500.00 was all that they could afford and would agree to pay"; (b) plaintiff's agents told defendants that plaintiff company would furnish the labor and materials and perform according to the contract for a total price of $3,500.00; and ". . . that the plaintiff would absorb the sales tax *and other charges* so that the total the defendants would be required to pay would be $3,500.00." (Italics ours.)

In the presence of defendants, "$3500.00 inc. tax" was inserted in the appropriate blank of the printed contract. At the same time, the figures "60" and "$71.88" were inserted so that the contract provided for 60 monthly installments of $71.88. Both entries were made in ink. Defendants were led to believe that the monthly installments totaled $3,500.00; in fact, they total $4,312.80. The space for "Finance Charge" was left blank.

In the absence of defendants, plaintiff caused to be entered on the contract (in pencil) a finance charge of $812.80, thus making the total $4,312.80.

The same evening the contract was signed, defendants computed the total of monthly payments ($4,312.80) and later refused to allow plaintiff to perform the work.

The contract contains the following clause:

---

[1]Mr. Roehl (defendant) testified:

". . . they made the stipulation that they would make us a good deal if we will let them take pictures of before and after on the house and later on show people the place."

Mrs. Roehl (defendant) testified:

". . . they told us that they could give us a real good cheap job, they said a cheap job but a good job, if we would allow them to use our home as a before-and-after advertisement on TV. We had no objection to that and also I believe it was Mr. Brown who said that they would bring people past our house out on the street, they wouldn't bother us, but they would bring them past to show our house which is in need of paint, they would see the difference in it and they expected Mr. Ayers to get quite a few sales in Sunnyside from it because they could see the improvement that the siding made on our house."

" . . . this [agreement] shall constitute the entire contract and be binding upon the parties hereto, as there are no covenants, promises or agreements, written or oral, except as herein set forth. . . ."

The trial judge was well aware of this court's decision in *Haagen v. Landeis,* 56 Wn. (2d) 289, 352 P. (2d) 636 (1960). He had tried that case also; our decision had been filed for publication 11 days prior to the trial of the instant case.

After trial, the judge announced his oral ruling. He analyzed the facts and concluded:

" . . . the court is finding that fraud is here and vitiated the contract. The judgment will be for the defendants."

In reaching this conclusion, the judge observed:

" . . . the court is still adhering to the rule, unless and until the recent case of *Haagen v. Landeis,* 156 W.D. 301 [the remittitur had not yet been sent down by this court and the possibility of a petition for rehearing had not been determined], becomes definitely the law, that fraud vitiates the entire contract, and notwithstanding the provision in the contract that there are no understandings or agreements that are not contained in writing in the contract, that nevertheless fraud can be shown and if shown vitiates the contract. Now, if our Supreme Court does in fact abandon that rule, of course *the court will have to change its ruling here* because that is the basis of the court's ruling." (Italics ours.)

Petition for rehearing in *Haagen* was denied November 10, 1960. Subsequently (the date does not appear in the record before us), the trial judge filed a written memorandum opinion in which he again recognized that plaintiff's agents were guilty of fraud when they stated to defendants that $3,500.00 was all they would be required to pay. The trial judge said:

" . . . It was the defendants' testimony that it was agreed that they would not be required to pay finance charges. The contract contained a clause providing in part:

" ' ****this shall constitute the entire contract and be binding upon the parties hereto, as there are no covenants, promises, or agreements, written or oral, except as herein set forth.'

"The court held that despite this clause, fraud vitiated the contract. The court further stated however, that the case of *Haagen v. Landeis,* 56 Wn. (2d) 289, which was then pending in the Supreme Court (petition for a rehearing having been filed) would control when finally determined. The petition for a rehearing in that case has been denied. Our court in the Haagen case, supra held:

" 'The oral representations upon which the respondents relied were not contained in the agreement and, in fact, contradicted the plain and unambiguous provision thereof. Therefore, the respondents had no right to rely upon the oral representations. See Kelly v. Von Herberg, 184 Wash. 165; 50 Pac. (2d) 23, (1935). The trial court erred in finding fraud.'

"Under the rule of the Haagen case, supra, the defendants may not rely upon the oral representation which they claim constituted fraud.

"Plaintiff will, therefore, be awarded judgment."

In view of our holding in *Haagen* the trial judge had no choice. He entered a conclusion of law upon which judgment is based:

"That the defendants were not entitled to rely upon the representation of the plaintiff's agents that the total amount called for by the contract was $3,500.00."

In *Webster v. L. Romano Engineering Corp.,* 178 Wash. 118, 34 P. (2d) 428 (1934) and in a plethora of decisions citing it, the court set forth the nine essential elements of fraud, all of which must be established by clear, cogent, and convincing evidence. In the instant case, we are concerned only with the eighth element—the right of defendants to rely upon the false and fraudulent representation.

*Haagen v. Landeis, supra* (four judges signed the majority opinion; four dissented; one concurred in the result), is authority for the trial court's conclusion that, in the face of a merger clause in the contract, as a matter of law, defendants were not entitled to rely upon the fraudulent representations of plaintiff's agents.

■ Recently, this court had occasion to notice that there has been a

" . . . marked change in judicial attitude during the last half century toward the question of justifiable reli-

ance. . . ." *Johnson v. Olsen,* 62 Wn. (2d) 133, 135, 381 P. (2d) 623 (1963).

We believe that *Haagen sub silentio* overruled at least seven prior decisions of this court.[2] To the extent that it is inconsistent with the general rule that a merger clause in a written contract does not foreclose the right to prove fraud, it is overruled.

Restatement, Contracts § 573, uses the following example:

"2. A and B enter into a written bargain that contains a clause stating that no representations not therein contained have been made. Fraudulent misrepresentations not contained in the writing in fact induced its formation. The bargain is voidable and an action can be maintained for deceit, the clause intended to exclude the assertion of fraud being illegal."

The policy reasons behind the majority rule are discussed in the classic case of *Angerosa v. White Co.,* 248 App. Div. 425, 290 N. Y. S. 204 (1936):

" . . . To deny relief to the victim of a deliberate fraud because of his own negligence would encourage falsehood and dishonesty . . .

" . . .

" . . . In this jurisdiction protection is given to one who is injured by falsehood or deception; fraud vitiates everything which it touches, and destroys the very thing which it was devised to support; the law does not temporize with trickery or duplicity. A contract, the making of which was induced by deceitful methods or crafty device, is nothing more than a scrap of paper, and it makes no difference whether the fraud goes to the factum, or whether it is preliminary to the execution of the agreement itself. . . ."

█ Plaintiff argues that the contract shows on its face that defendants were to pay $71.88 per month for a period

---

[2]*Becker v. Lagerquist Bros., Inc.,* 55 Wn. (2d) 425, 348 P. (2d) 423 (1960); *Nyquist v. Foster,* 44 Wn. (2d) 465, 268 P. (2d) 442 (1954); *Gronlund v. Andersson,* 38 Wn. (2d) 60, 227 P. (2d) 741 (1951); *Peoples Bank & Trust Co. v. L. Romano Engineering Corp.,* 188 Wash. 290, 62 P. (2d) 445 (1936); *Producers' Grocery Co. v. Blackwell Motor Co.,* 123 Wash. 144, 212 Pac. 154 (1923); *Schroeder v. Hotel Commercial Co.,* 84 Wash. 685, 147 Pac. 417 (1915); *Union Inv. Co. v. Rosenzweig,* 79 Wash. 112, 139 Pac. 874 (1914).

of 60 months. The product of these figures ($4,312.80) would have been apparent to defendants had they been facile with mental arithmetic. This, of course, is in direct conflict with the written price of $3,500.00, defendants' insistence that they would pay no more, and the agents' representations that $3,500.00 would include all charges. Misrepresentations frequently have the effect of causing the other party to fail to use the means of knowledge within his power.

One authority said:

" . . . The modern tendency is certainly toward the doctrine that failure to use available means of knowledge because of reliance on misrepresentation, even negligent failure to use them, because of trusting to a misrepresentation, will not excuse positive wilful fraud or deprive the defrauded person of his remedy. . . ." 3 Williston on Sales (rev. ed.) § 634.

We conclude, as did the trial court in the first instance, that fraud vitiates the contract, and that defendants are not foreclosed by the merger clause of the contract from placing reliance upon the fraudulent representations.

The judgment is reversed.

DONWORTH, ROSELLINI, HUNTER, HAMILTON, and HALE, JJ., concur.

HILL, J. (concurring in the result)—I concur in the result. There is no question but that fraud vitiates a contract; and that, as a general rule, a party to a written contract is not foreclosed by a merger clause from proving fraudulent representations made by the other party, or his agent acting within the scope of his authority.

I cannot agree with the majority in its statement that, in view of our holding in *Haagen v. Landeis* (1960), 56 Wn. (2d) 289, 352 P. (2d) 636, the trial court had no alternative but to enter the judgment we are now reversing. The majority, in its treatment of the *Haagen* case, sets up a straw man and, then, proceeds with a devastating demolition.

It was never intended that *Haagen* should overrule *sub silentio* or any other way the cases enumerated in footnote 2 of the majority opinion, or that it would apply in a case like the present, where no one questions the authority of the agents who made the representations relied on.

*Haagen* has a very limited application, so far as the merger clause is concerned, and relates to cases where the issue is the authority on the part of an agent (whose misrepresentation is the basis of the claimed fraud) to vary by parol the plain and unambiguous provisions of a written application prepared by his principal. None of the cases listed in the footnote to which we have referred presents such an issue.

*Haagen* was an action to recover the agreed price of certain advertising. The defendants testified that certain misrepresentations were made by an agent who was urging them to list their properties for sale in a publication called the "National Buyers' Guide." The merger clause[3] in no way limited the defendants in their proof. The issue was whether, having signed a short and simple application (set out in full in the opinion) for space in that publication, which application clearly stated the amount to be paid and the time of payment, the defendants were entitled to rely on representations by the agent which were that they would not have to pay for the advertising unless they sold their property.

The defendants knew that they were dealing with an agent, and their contention was that he had apparent authority to vary the terms of the application for advertising. There was no evidence of any such authority, except the representations of the agent.

The representations by the agent were not about something extraneous to the writing, but in effect were that the plain and unambiguous provisions relative to payment, contained in the application, did not mean what they said.

---

[3]The merger clause in the application for the advertising read: " 'This Agreement contains the entire understanding between us and no representation or inducement has been made that is not set forth herein.' "

It is difficult to see how a publishing company could do more to make clear the limitation on the authority of an agent soliciting advertising than by limiting the agreement with the advertiser to the application which the advertiser signed. This was not a contract until the application was accepted by the publishing company, and the advertiser could have refused to sign the application unless it contained the terms to which he agreed. The publishing company had nothing to act upon except the application submitted to it.

There is still another reason why the *Haagen* case was correctly decided. The defendants—after the application for advertising space had been sent to the publishing company—notified that company of the claimed representations by its agent and, then, within 2 or 3 days after this notification, the defendants sent the company the following letter:

" 'This note is [to] cancel expressed misunderstanding recently sent you. Please continue service on regular schedule.' "

The *Haagen* opinion states:

" . . . The letter withdrew respondents' previous objections to the contract as written and requested performance as provided therein."

*Haagen* held:

1. To prove fraud, the person claiming a misrepresentation must prove that he had a right to rely thereon.

2. Where the claimed misrepresentation is made by one known to be an agent, there can be no right to rely thereon, unless the agent was acting within the apparent scope of his authority.

3. Under the circumstances of the case, there being no evidence of apparent authority to vary the printed application for advertising except the fact of agency, the statement in the application that

" . . . 'This Agreement contains the entire understanding between us and no representation or inducement has been made that is not set forth herein.' . . . "

conclusively negated the claimed apparent authority of the agent to modify the application orally. (The word "conclusively" was properly used in that case because there was no evidence to the contrary.)

4. The persons claiming fraudulent representations had failed to prove their right to rely thereon by clear, cogent, and convincing evidence.

5. The persons claiming misrepresentations had specifically withdrawn their objection to the agreement claimed to be procured by fraud.

In my opinion, *Haagen* was correctly decided. Two statements in that opinion, taken out of context, are the reason for its repudiation by the majority:

A. Since the oral representations, upon which defendants relied, were not contained in the agreement and, in fact, contradicted the plain and unambiguous provisions thereof, they had no right to rely thereon.

B. The written agreement conclusively negates the alleged apparent authority of the agent to modify the agreement orally.

"A" would not be an accurate statement, if the representations had been made by a party to the agreement or by an agent whose authority to make them was not questioned, or by an agent who had apparent authority to make them. Considered in the context, the defendants in *Haagen* had no right to rely upon such representations because the agent had no apparent authority to make them. Actually, the merger clause alone is unimportant to a cause of action for fraud, except to the extent that it, together with other language in the contract, shows an absence of apparent authority (as in *Haagen*), or the presence of that authority, which is conceded in the instant case.

With reference to "B," we have already commented on the justification for the use of the word "conclusively."

The court has properly decided this case upon its facts, as it did the *Haagen* case upon its facts.

OTT, C. J., concurs with HILL, J.

FINLEY, J. (concurring in the result)—I concur in the result for the reasons stated in my dissent in *Haagen v. Landeis* (1960), 56 Wn. (2d) 289, 352 P. (2d) 636. The apparent authority of the agent of the seller is material only where the buyer is attempting to hold the principal on a warranty, made by the agent but excluded in the written contract. It is immaterial if the seller is seeking enforcement of a contract whereby he would benefit through the fraud of his agent.